# Richmond.

## HENRIETTA AND W. R. CARPENTER v. JESSE AND MOLLIE INGRAM.

January 17, 1929.

Absent, Chichester, J.

The opinion states the case.

*Buford & Raney*, for the appellants.

*George E. Allen* and *P. G. Jefferson*, for the appellees.

CAMPBELL, J., delivered the opinion of the court.

This is an appeal from the Circuit Court of Brunswick county. The object of this suit, which was instituted by the appellees, was to rescind and cancel

a deed in which the appellants were the grantors and the appellees were the grantees, upon the ground of fraud and deceit.

In the year 1925, Henrietta F. Carpenter was the owner of a seventy-five acre tract of land situate in Brunswick county, which was subject to a deed of trust in favor of the Maryland-Virginia Joint Stock Land Bank of Baltimore for $1,500.00. Mollie Ingram, who had been an employee of the appellants for several years, entered into negotiations with appellants for eighteen acres of land, part of the seventy-five acre tract, at the price of $50.00 per acre. On August 7, 1925, a deed was executed conveying the eighteen acres of land to appellees for the stated consideration of $900.00, only $850.00 of which was actually paid, as the appellants made a gift of one acre of land to Mollie Ingram. There was inserted in the deed this clause: "The property hereby conveyed is subject to a certain mortgage in favor of Maryland-Virginia Joint Stock Land Bank, dated September 26, 1924, and duly of record in the clerk's office of Brunswick county."

In August, 1926, appellees filed their bill to rescind the deed, basing their allegation of fraud and deceit upon the above quoted provision of the deed. Depositions of sundry witnesses were taken on behalf of appellees, at the taking of which counsel for the appellants was present. The taking of depositions was concluded on the 27th day of August, 1926. From that date the cause was permitted to lie dormant until the 18th day of July, 1927, when notice was given counsel for appellants that on the 25th day of July appellees would by counsel present a motion to the court for the entry of a decree in the cause pursuant to the prayer of the bill. No action was taken in the matter until the 11th day of August, when Messrs. Buford and

Raney appeared as counsel for appellants (the original counsel having withdrawn from the case), and asked leave to file the following answer in the cause:

The joint and separate answer of Henrietta F. Carpenter and W. F. Carpenter, her husband, to a bill of complaint exhibited against them in the Circuit Court in the county of Brunswick by Jesse Ingram and Mollie Ingram:

"These respondents, for answer to the said bill, or to so much thereof as they are advised it is material for them to answer, answer and say:

"That it is true that prior to the 2nd day of August, 1925, these respondents had negotiations with the complainants, or perhaps more accurately, with the complainant, Mollie Ingram, for the sale to her of a parcel of land, the said Mollie Ingram being desirous of purchasing the parcel of land containing eighteen acres mentioned in the bill. These respondents offered to sell the said Mollie Ingram a parcel of land which was unencumbered, but the said complainants preferred to buy the tract of eighteen acres mentioned in the bill.

"While it is true that the complainants are colored persons, it is not true, as alleged in the bill, that they are unlearned. The said Jesse Ingram is not able to read or write, but the said Mollie Ingram can both read and write.

"It is true that the complainants had known these respondents for many years and had confidence in their honesty and integrity, and these respondents deny that they have done anything in connection with the transactions set forth in the said bill which should forfeit the confidence reposed in them by said complainants.

"At the time the said complainants were negotiating with these respondents for the purchase of a tract of

land, these respondents greatly preferred to sell them another tract which, as has already been stated, was unencumbered; they did not want to sell any portion of the tract from which the parcel containing eighteen acres was cut off for the complainants. The complainants asked the respondents if the tract of eighteen acres, which was subsequently purchased by them, was subject to any encumbrances; these respondents informed them that the whole tract, of which the said eighteen acres was a part, was subject to a lien in favor of the Maryland-Virginia Joint Stock Land Bank of Baltimore for $1,500.00, which had to be paid off within thirty-three years from its date, to which they replied that they left the matter in the hands of these respondents, depending upon them to perfect their title against the assertion of any claim by the Maryland-Virginia Joint Stock Land Bank of Baltimore against them or against the parcel of land purchased by them.

"These respondents, having agreed with the complainants on the price to be paid for the parcel of eighteen acres conveyed to them, the respondent, W. R. Carpenter, acting on behalf of himself and the respondent, Henrietta F. Carpenter, his wife, came to the town of Lawrenceville and retained Mr. L. J. Hammack, a reputable attorney at law practicing in said town, to prepare a deed conveying the said eighteen acres to the complainants; after the said eighteen acres of land had been surveyed and cut off from the residue of the tract of approximately seventy-five acres, which was subject to the lien for $1,500.00; and in accordance with instructions given him by these respondents, Mr. Hammack inserted in the deed a clause stating that the conveyance was made subject to said lien; but it was not then the intention, nor has it ever been the intention of these respondents, that any portion of the parcel

of eighteen acres conveyed to the complainants should ever be subjected to the payment of the lien of the said $1,500.00, or any part thereof. After the deed had been prepared by Mr. Hammack, the respondent, Henrietta F. Carpenter, read the deed to both of said complainants at her home at Alberta in the county of Brunswick, and having done so delivered the deed to the complainant, Mollie Ingram, and suggested that she submit it to E. P. Buford, another lawyer practicing at the town of Lawrenceville, so that he could advise her of the legal effect of the deed. The said complainants kept said deed in their possession from the day of its acknowledgment to the date of its recordation, and on the last mentioned day the complainant, Mollie Ingram, brought the deed to the respondent, W. R. Carpenter, and requested him to take it to the clerk's office and cause it to be recorded, which said respondent accordingly did.

"On the 6th day of October, 1926, respondents sold the residue of said original tract, said residue being fifty-seven acres, with all the improvements, to J. C. Williams for $2,500.00, $1,000.00 of which was to be paid by him to the respondents and of which he has paid $200.00, and the residue of $1,500.00 was to be paid by the said J. C. Williams to the Maryland-Virginia Joint Stock Land Bank of Baltimore in satisfaction of its said lien, the said Williams having in the said deed expressly assumed the payment of the said $1,500.00 to the said Maryland-Virginia Joint Stock Land Bank.

"These respondents are now arranging with the said Maryland-Virginia Joint Stock Land Bank of Baltimore to release the parcel of eighteen acres conveyed to the plaintiff from the lien of its said deed of trust or mortgage, so as to clear the title of the said com-

plainants from the encumbrance of said deed of trust, or any part thereof.

"These respondents paid $50.00 per acre in cash for the original tract of seventy-five acres, of which the said parcel of eighteen acres conveyed to the complainants is a part, when there were no improvements thereon, and they have caused improvements to the amount of at least $1,500.00 to be made upon said land in the way of buildings and other improvements, and they have never had any doubt about the sufficiency of the residue of fifty-seven acres remaining after the eighteen acres was cut off and conveyed to the complainants to satisfy the lien of $1,500.00 held by said bank

"The price at which these respondents sold said eighteen acres of land to the complainants was $900.00, or $50.00 per acre, but these respondents had previously, while said Mollie Ingram was in their service, told said Mollie Ingram that they would give her one acre of land wherever she wanted it, and when they came to close the transactions by which the complainants bought the eighteen acres, they deducted $50.00 from the purchase price as a gift of one acre thereof to her, making the purchase price actually paid these respondents $850.00.

"These respondents, without going into further detail, deny all and singular the allegations of fraud and misconduct imputed to them in the said bill, and say that all said allegations are unwarranted by any facts.

"Immediately after this suit was brought these respondents retained Mr. L. J. Hammack as their attorney to defend them in this suit, and being themselves unacquainted with matters of law and the rules of practice, they entrusted the whole conduct of the case to him, believing that whatever was necessary

to be done for the protection of their rights would be done by him, and these respondents did not know until on or about the — day of July, 1927, that Mr. Hammack had not filed on their behalf an answer setting up their defense to said bill. On or about the last mentioned date Mr. Hammack abruptly withdrew from the case and declined to act further as counsel for these respondents, and it was after his withdrawal that these respondents consulted other counsel, who advised them that no answer had been filed on their behalf.

"These respondents have no criticism to make of Mr. Hammack, but they do say that being now advised as to the requirements of law with regard to the filing of an answer, they have been taken by surprise and are placed at great disadvantage unless your honor, under the circumstances of the case and in the exercise of the discretion vested in him by law, shall permit them to file this their answer, notwithstanding the lapse of the six months period prescribed by statute.

"These respondents, therefore, pray that they be allowed to file this their answer, and if necessary, that they be afforded an opportunity to take such depositions as they may be advised, to sustain the allegations herein contained; that they be afforded sufficient time to have the land conveyed to the complainants released from the liens held by the said Maryland-Virginia Joint Stock Land Bank of Baltimore, so that they may carry out their intention of protecting the complainants from any loss by reason of the existence of said lien upon said land at the time it was conveyed to the complainants by these respondents.

"And now having fully answered, these respondents pray that they may be hence dismissed with their costs in this behalf expended."

The objection of the appellees to the filing of the answer was sustained on the ground that no good cause had been shown by appellants for their failure to file their answer within the time prescribed by section 6122 of the Code, and a decree was entered rescinding the deed in issue and directing the return of the purchase price to the appellees.

The action of the court in refusing to permit appellants to file their answer setting forth their defense and to produce evidence in support thereof is assigned as error.

Section 6122 of the Code, so far as material, reads as follows: "A defendant in equity upon whom process has been executed shall file his answer or other defense * * * within six months from the date of such service, unless * * * for good cause shown, the time be lessened by the court or additional time be given by the court, or the judge thereof in vacation, within which to file the same. After the lapse of such six months, or additional time, if any such be granted, no answer or other defense shall be received except for good cause shown * * *."

As said by Sims, P., in *Gray* v. *Francis*, 139 Va. 358, 124 S. E. 449: "The statute is a wholesome one, which should be firmly enforced * * *. But the statute should be so enforced only in accordance with its true intent and meaning." The inhibition in the statute does not absolutely preclude a defendant from filing an answer; it only goes to the extent of imposing upon a defendant the *onus* of showing that his failure to file an answer was due to a good cause and of course must meet the requirements of the statute as to costs, etc. To lay down the hard and fast rule that the provisions of the statute are mandatory would deprive the court of the exercise of any

discretion whatever in the matter. This was not the intention of the legislature. The intention as expressed in the language of the act was to vest in the trial court a judicial discretion the exercise of which should be subject to appellate review. It is impossible to lay down a rule which will be binding in all cases.

In the instant case the failure to file their answer may have been due to neglect of counsel. Ordinarily a litigant must bear the burden resulting from the incompetence or neglect of counsel. Especially is this true where a final decree has been entered adjudicating the principles of the cause or a final judgment has been pronounced. The books are full of decisions denying relief where, due to laches in making defense, judgment has been pronounced in the case. In the absence of fraud, accident or surprise, a judgment, when entered and no appeal taken, is conclusive, even though the judgment is manifestly wrong in law or fact. *Ayres* v. *Morehead's Adm'r*, 77 Va. 586. The reason for this doctrine even in a case of manifest hardship is that the judgments of a court must possess stability in order that vested rights may be enforced. But here no judgment had been pronounced, no decree entered adjudicating the principles of the cause, no vested right had been acquired. The filing of the answer could not have resulted in an unreasonable delay, especially in view of the fact that the cause had lain dormant for over a year.

Many cases in support of the ruling of the trial court have been cited by the distinguished counsel. With but one exception the relief sought, either by injunction or bill of review, was against a final decree or a final judgment in a proceeding instituted after the adjournment of the term of court in which the action complained of was taken.

In *Gray* v. *Francis*, *supra*, the refusal of the court to allow an answer to be filed after the six months period had elapsed was sustained by this court in the following language: "In the instant case, the defense sought to be made by the demurrer, or answer, not allowed to be filed, did not deny any of the allegations of fact of the bill—did not seek to put the plaintiffs to any proof, or work any delay or continuance—but took the position that, admitting all of the allegations of fact of the bill and all of the facts shown by the evidence introduced in the cause to be true, still, that it was apparent on the face of the record that the decree complained of was wrong, as a matter of law." That case does not deal with the discretionary power of the court in the premises but does affirm the decree on the ground that no good cause is shown why the answer was not filed in time.

While perhaps not necessary to a decision of the case, it was held in *Combs* v. *Agee*, 148 Va. 473, 139 S. E. 265, that the action of the court in permitting the defendant to file his answer to the petition of the plaintiff, though the six months period had expired, was without error.

There are other assignments of error, but as they involve a discussion of the merits of the case, it would be improper to enter upon a consideration of them at this time. Our conclusion is that the trial court erred in its refusal to allow appellants to file their answer in this cause and for this error the decree will be reversed and the cause remanded for further proceedings according to law.

*Reversed.*