**Salem**

TEDDY JOE SLAGLE

v.

JANICE MARIE SLAGLE

No. 1492-88-3

Decided November 20, 1990

COUNSEL

Robert W. Detrick, for appellant.

Robert B. Dickert (Warren & Dickert, on brief), for appellee.

OPINION

**KEENAN, J.**—Teddy Joe Slagle (husband) appeals from a decision of the trial court ordering him to pay child support in accordance with the final decree of divorce. In this appeal, he argues that he should no longer be obligated to support Teddy Slagle, Jr. (child) because blood tests performed after entry of the final decree conclusively establish that he is not the biological father of the child. The sole issue presented here is whether the husband, in a motion, is estopped from challenging his paternity and his attendant obligation to support the minor child, where the final di-

vorce decree states that the child was born of the marriage. We find that the doctrine of collateral estoppel bars such a challenge. Accordingly, we affirm the decision of the trial court.

Teddy and Janice Slagle (wife) were married in June 1982. Prior to that, in March or April of 1981, Janice informed Teddy that she was pregnant with his child. A son, who was named Teddy Slagle, Jr., was born on November 21, 1981. The parties lived together from June 1982 until September 1983, at which time they separated. The husband paid *pendente lite* support in the amount of $600 per month to the wife until a final decree of divorce was entered on April 28, 1986. At that time the wife was awarded custody of the child. The husband was ordered to pay $250 per month in child support and $350 per month in spousal support. In the final divorce decree, the trial court found that Teddy Slagle, Jr. was a child born to the marriage of the parties. No appeal was taken from this decree.

On July 9, 1987, the husband petitioned the juvenile and domestic relations court to order blood grouping tests to determine his paternity in light of assertions made by the wife that he was not the biological father of the child. In addition, the husband requested that the court review, and if warranted, abate both his spousal and child support obligations. After receiving a report which concluded that the husband cannot be the child's father,[1] the juvenile court abated the husband's child support obligation as of October 1987. The juvenile court did not reduce spousal support payments, however, and also ordered payment of support arrearages totalling $2524. Both parties appealed.

A hearing *ore tenus* was held in circuit court on July 15, 1988. At that hearing, the trial court found that the April 1986 final decree of divorce constituted a final adjudication of the husband's paternity and thus was not subject to collateral attack. Accordingly, the trial court reversed the order of the juvenile court abating the husband's child support obligation and ordered the husband to resume making child support payments in the amount of $250 per month. The husband then noted this appeal.

---

[1] The report did not contain any numeric probability of paternity. Rather, it stated that paternity was excluded. The report indicated that due to the presence of certain antigens in the child which were not present in the father and vice versa, "the alleged father cannot be the biological father of the child."

 The issue before us is whether the trial court erred in determining that the husband's evidence that he was not the father of the child was not a proper basis on which to modify his child support payments because the issue of his paternity already had been conclusively adjudicated in the final divorce decree. Under the principle of collateral estoppel, "the parties to the first action and their privies are precluded from litigating [in a subsequent action] any issue of fact actually litigated and essential to a valid and final personal judgment in the first action." *Norfolk & W. Ry. v. Bailey Lumber Co.*, 221 Va. 638, 640, 272 S.E.2d 217, 218 (1980); *see also Montana v. United States*, 440 U.S. 147, 153 (1979)("A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the parties.' "); *Ashe v. Swenson*, 397 U.S. 436, 443 (1970).

The husband raised the issue of his paternity in a 1987 petition for modification of child support wherein the wife was named as a defendant. There is no question, therefore, that the issue was being raised in a subsequent action between the same parties. Furthermore, no appeal was taken as to the final decree. Thus, it is a final judgment. Rule 1:1. The remaining issues, therefore, are whether the husband's paternity was actually litigated in the divorce proceedings, whether the question of the husband's paternity was essential to the judgment, and whether the judgment was valid.

 It is well settled that the burden rests with the party asserting the collateral estoppel bar to establish by a preponderance of the evidence "that the precise issue or question he seeks to preclude was raised and determined in the first action." *United States v. Davis*, 460 F.2d 792, 796 (4th Cir. 1972). Before finding that a party has met its burden, the trial court is "required to determine exactly what was decided in the earlier trial . . . and the inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' " *Davis*, 460 F.2d at 796 (quoting *Ashe v. Swenson*, 397 U.S. at 444).

Neither of the parties made the record of the divorce proceedings a part of the record on appeal in the paternity action. Moreover, the parties did not file the transcripts of the *ore tenus* hear-

ing with this court. Consequently, our review of the trial court's finding of collateral estoppel is limited to the facts established by the court documents in the paternity action, including the final decree of divorce between the parties. Incorporated in that decree was the trial court's finding that the child was born of the marriage. In addition, the decree specifically awards custody of the child to the mother and orders that the father pay child support. We hold that implicit in these rulings is a finding by the court that the husband was the father of the child, and thereby obligated to make support payments until the child reached the age of majority. Therefore, we find that the issue of the husband's paternity was actually litigated in the prior divorce proceedings.

This holding is consistent with the majority of jurisdictions which have considered this issue. *See, e.g., Conlon v. Heckler*, 719 F.2d 788, 797 (5th Cir. 1983)(applying Texas law); *Anderson v. Anderson*, 407 Mass. 251, 258, 552 N.E.2d 546, 551 (1990); *Rucinski v. Rucinski*, 172 Mich. App. 20, ____, 431 N.W.2d 241, 242 (1988); *In re Marriage of Yakubec*, 154 Ill. App. 3d 540, 544, 507 N.E.2d 117, 120 (1987); *In re Marriage of Detert*, 391 N.W.2d 707, 710 (Iowa Ct. App. 1986); *Clay v. Clay*, 397 N.W.2d 571, 575 (Minn. Ct. App. 1986), *appeal dismissed*, 484 U.S. 804 (1987); *Lerman v. Lerman*, 148 Vt. 629, 528 A.2d 1121 (1987); *Chrzanowski v. Chrzanowski*, 325 Pa. Super. 298, 305, 472 A.2d 1128, 1131 (1984); *N.C. v. W.R.C.*, 317 S.E.2d 793, 797 (W. Va. 1984); *Luedtke v. Koopsma*, 303 N.W.2d 112, 114 (S.D. 1981); *DeWeese v. Unick*, 102 Cal. App. 3d 100, 105-06, 162 Cal. Rptr. 259, 263 (1980); *McNeece v. McNeece*, 39 Colo. App. 160, 163, 562 P.2d 767, 769 (1977); *Butler v. Brownlee*, 152 Mont. 453, ____, 451 P.2d 836, 838 (1969). *But see Spears v. Spears*, 784 S.W.2d 605, 608 (Ky. Ct. App. 1990)(applying res judicata to the presumed father's attempt to challenge paternity would lead to an unjust result).

Furthermore, we hold that the issue of the husband's paternity was essential to the judgment with respect to the custody and child support provisions incorporated therein. Code § 20-107.2 provides in pertinent part: "Upon decreeing . . . a divorce . . . the court may make such further decree as it shall deem expedient concerning the custody and support of the minor children of the parties, and concerning visitation rights of the parents." As part of the final decree, the court awarded custody of the child to the

wife and ordered the husband to pay support. Before the trial court could enter a decree as to the custody and support of the child, the court had to determine that the child was a child of the parties.

■ Finally, it is generally held that "[i]n the absence of fraud, accident or surprise, a judgment, when entered and no appeal taken, is conclusive, even though the judgment is manifestly wrong in law or fact." *Carpenter v. Ingram*, 152 Va. 27, 36, 146 S.E. 193, 195 (1929). The husband has not argued, however, either in the trial court or on appeal that the April 1986 final decree of divorce was entered either by accident or surprise, or as a result of a fraud perpetrated on the court, nor has the decree itself been invalidated on any of these grounds. Consequently, the decree is a valid, conclusive judgment.

■ For these reasons, we find that the trial court properly concluded that the wife met her burden of proving that the collateral estoppel bar applied to the issue of the husband's paternity. Our inquiry, however, does not end here. Application of the collateral estoppel bar is inappropriate in situations where, although the matter raised in the second suit is identical in all respects to that decided in the first proceeding, either the controlling facts or the applicable legal rules have changed since the original action. *See United States v. County of Arlington*, 669 F.2d 925, 935 (4th Cir.), *cert. denied*, 459 U.S. 801 (1982). Further, collateral estoppel does not apply "when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." *Allen v. McCurry*, 449 U.S. 90, 95 (1980). Finally, "[r]edetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in [the] prior litigation." *Montana v. United States*, 440 U.S. at 164 n.11.

The record before us indicates that at the time of the divorce action, the husband did not have the conclusive knowledge provided by the genetic test results that he was not the biological father of the child. These tests, however, did not disclose facts occurring subsequent to the final decree, but merely verified facts in existence at the time the decree was entered, facts which could have been discovered through due diligence. Thus, the only fact which changed between the entry of the final decree and the subsequent paternity action was the husband's knowledge that he was

not the biological father of the child. However, it is clear from the record that at the time the final divorce decree was entered, the husband was aware that the child was born out of wedlock. Further, the parties had been separated for more than two years before the final decree was entered and custody was an issue in the divorce proceeding. Thus, the husband had ample opportunity during that time to establish or deny his paternity through use of genetic testing. His failure to have genetic tests performed prior to the entry of the final decree precludes a collateral attack on the final decree based solely on his subsequent knowledge that genetic tests excluded him as the father of the child.

Moreover, while the record before us is silent as to the actual proceedings in the divorce litigation, the husband has not claimed on appeal that he was denied a "full and fair opportunity" to litigate his paternity in the divorce proceeding. Nor has he argued that the applicable legal rules have changed since the original action.

Nevertheless, the dissent maintains that this case cries out for resolution and suggests a remand of the case to the trial court for a determination as to whether the wife perpetrated a fraud on the court in procuring the divorce decree. The dissent argues that, although the issue has not been raised either at trial or on appeal, it is implicit in both the record below and on appeal and thus the ends of justice require such an action. We disagree.

Initially, we note that the record in this support modification proceeding contains no evidence as to what, if any, representations the wife made to Slagle as to his paternity, either during the marriage or the divorce proceedings. In addition, the record contains no evidence to support the dissent's statement that the wife knew that Slagle was not the child's father or that she permitted the trial court to make a determination as to Slagle's paternity while knowing that he, in fact, was not the child's father. Indeed, the only evidence in the record as to the wife's knowledge with respect to Slagle's paternity is an allegation made by Slagle himself. In his petition to the juvenile court for support modification, Slagle requests that blood tests be performed due to allegations made by the wife that he was not the child's biological father. On this record, we believe that it is speculative to presume, as does the dissent, that the wife has always known that Slagle was not the child's biological father or that she acceded to the perpetration of

a fraud on the court.

Furthermore, the dissent claims that Slagle had every biological reason to believe that the child was his. The only evidence in the record touching on Slagle's knowledge as to the child's paternity, biological or otherwise, at the time of the entry of the final decree, was the wife's statement that he was the father of the child and the fact that the child carried his name. However, it is also clear from the record that the child was born out of wedlock, eight months prior to the marriage of the parties. No biological evidence has been made a part of the record except for the blood test results, which tests were taken more than fourteen months after the entry of the final decree.

■ Finally, we disagree with the dissent's statement that had Slagle alleged fraud in this action, our conclusion would have been different. Principles of collateral estoppel may not be invoked to sustain fraud. *Haudenschilt v. Haudenschilt*, 129 W. Va. 92, 113-14, 39 S.E.2d 328, 329 (1946). Accordingly, in an action to challenge the validity of the divorce decree, the wife could not defend against such a challenge by asserting the collateral estoppel bar. This action, however, was not an action to invalidate the divorce decree. Rather, it was an action to modify support, based on a change in condition. The facts supporting the change in condition, however, were facts which had already been conclusively determined in the final decree. The trial court was not required, prior to determining whether the bar of collateral estoppel applied in the subsequent action, to decide whether the original judgment was procured as the result of fraud, particularly when no allegations of fraud were ever presented to the trial court.

The April 1986 final decree of divorce in the case before us has never been directly challenged, either on appeal or in an independent action pursuant to Code § 8.01-428(C). If the husband has any remedy in this case, it is in the form of an action to invalidate the final decree, not to modify support.

For these reasons, we find that the trial court did not err in ruling that the husband was collaterally estopped in the subsequent action to modify child support from raising the issue of his paternity as the basis for such a modification. The divorce decree constituted a final adjudication of his paternity, and he is not entitled to rely on subsequent findings with respect to that issue as a

basis of relief from the support ordered therein so long as that decree remains a valid, final judgment.

Accordingly, we affirm the decision of the trial court.

*Affirmed.*

Moon, J., concurred.

Koontz, C.J., dissenting.

I respectfully dissent from the majority opinion. I do not disagree with the majority's interpretation of the nature and scope of the collateral estoppel doctrine. While the record in this case is woefully inadequate, I also agree with the majority's conclusion that Slagle has not specifically argued in the trial court or on appeal that the final divorce decree, which determined that he was the father of the child in question and ordered him to pay child support, was entered as a result of fraud perpetrated on that court. In my view, however, the issue of fraud on the trial court is both implicit and palpable in the proceedings below and on appeal. Accordingly, I would invoke the ends of justice exception to Rule 5A:18 and remand this appeal for a determination of the issue of whether fraud bars the application of estoppel on the facts of this case.

It is undisputed that Slagle is not the biological father of the child in question. We may assume the trial court would not have ordered him to pay child support had that court been made aware of that fact prior to the entry of the divorce decree. This is not a case of a husband who promised to treat his wife's child by another as his son, thereby agreeing to assume the child support obligation of the biological father. *See T. . . v. T. . .*, 216 Va. 867, 224 S.E.2d 148 (1976). This is a case of a child born out of wedlock under circumstances in which Slagle had reason to believe that he was the biological father, and the mother throughout the subsequent marriage and the subsequent divorce proceeding assured him that he was. Regardless of these assurances, we know from the record that the mother permitted the trial court to make a determination that Slagle was the child's biological father when in fact he was not.

It is reasonable to assume, even to presume, that had Slagle known or had reason to know that he was not the biological father

he would have taken the necessary steps to make that fact known to the trial court prior to the entry of the final decree. It is equally as reasonable to assume that Slagle's wife and the child's mother has always had reason to question Slagle's paternity. Moreover, nothing in the limited record before us indicates that she has not always known that Slagle is not the biological father.

An unjust result is patent in this case. I find no solace in the majority's conclusions that Slagle could have discovered through due diligence that he was not the biological father and that he had ample opportunity to establish or deny his paternity through use of genetic testing prior to the entry of the final decree. These conclusions ignore the fact that there is nothing in the record to indicate that Slagle had any reason to question his paternity at that time. Rather, based upon his relationship with the mother of the child he had every reason to believe that he was the biological father until after the entry of the final decree. When he had reason to question this paternity, he filed the petition in the juvenile court. In my view, the results of the genetic test obtained pursuant to that petition clearly establish a potential fraud on the divorce court.

Human experience is consistent with Slagle's failure to challenge his paternity until he had reason to do so. Generally, a husband or a biologically potential father has no reason to question paternity when assured by his mate that he is the father of a particular child. Contrary knowledge is uniquely within the purview of the mother. Where, as here, however, a biologically potential father is given reason to believe he is not the biological father and he secures the genetic testing which proves that he is not the biological father, the trial court should determine whether a prior decree erroneously adjudicating paternity was procurred by fraud. In such a case, if fraud is established, collateral estoppel is not applicable and the prior decree should be vacated.

In the present case, the majority concludes that without a specific allegation of fraud Slagle is estopped. Had such an allegation been specifically made, I have no doubt the majority would reach a different conclusion. In my view, the allegation of fraud is implicit. It cries out for resolution. Accordingly, I would remand this appeal for a determination of that issue and if a fraud was perpetrated on the trial court, the court should vacate its prior decree of child support.

Finally, I am at a loss to understand the basis for the trial court's refusal to vacate or reduce its prior order of child support even if estoppel applies to the issue of Slagle's paternity. The trial court retains the authority to adjust a prior award of child support until the child reaches majority. The fact that Slagle is not the biological father, even though he remains the judicially adjudicated father, is a factor which should warrant consideration of a reduction in child support.