COURT OF APPEALS OF VIRGINIA

Present:  Judges Frank, Agee and Senior Judge Coleman
Argued at Salem, Virginia


STEVEN R. LUCAS

v.    Record No. 1744-00-3

COMMONWEALTH OF VIRGINIA,
 DEPARTMENT OF SOCIAL SERVICES,
 DIVISION OF CHILD SUPPORT ENFORCEMENT,
 ex rel. TERESA BECKS

MEMORANDUM OPINION[*] BY
JUDGE ROBERT P. FRANK
JULY 24, 2001


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
John J. McGrath, Jr., Judge

Sherwin John Jacobs for appellant.

Steven P. Roadcap, Special Counsel (Alice G.
Burlinson, Office of the Special Counsel;
Mark L. Earley, Attorney General; Ashley L.
Taylor, Jr., Deputy Attorney General;
Robert B. Cousins, Senior Assistant Attorney
General; Craig M. Burshem, Regional Special
Counsel, on brief), for appellee.


     Steven R. Lucas (appellant) appeals the trial court's

dismissal of his petition to reduce child support.  On appeal, he

contends the trial court erred in:  1) failing to consider the

lack of adequate notice and service upon him for the June 29, 1993

and July 6, 1993 blood tests and the September 13, 1993 show cause

hearing, 2) finding the evidence was sufficient at the September

13, 1993 show cause hearing to establish paternity, 3) failing to

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

permit him to avail himself of an independent action to set aside the September 13, 1993 order and finding no extrinsic fraud by Teresa Becks, 4) failing to find that the current body of jurisprudence with respect to the determination of paternity requires revision because error or mistake can create a fiction that deprives an individual of his liberty and property, and 5) failing to find that the paternity test establishing he is not the father of the child was a material change in circumstance that warrants a termination of child support. Finding no error, we affirm the trial court's dismissal of the petition to reduce child support.

## I. BACKGROUND

Teresa Becks (mother) gave birth to Brian Lee Becks on April 25, 1992. In late 1992, the Division of Child Support Enforcement (Division) received an application from mother for child support services. Mother indicated on the Division's application that she thought a man named Jackson was the father of her child. The Division filed a paternity petition against Jackson. As a result of testing, Jackson was excluded as the father. The Division's petition was dismissed. Mother then named appellant as the putative father of her child, testifying she had engaged in sexual relations with him during the time of conception.

In January 1993, the Division filed a new paternity petition in the Rockingham County Juvenile and Domestic

-

Relations District Court (JDR court) against appellant. On March 23, 1993, appellant, an inmate, was personally served with the petition at Powhatan Correctional Facility. Because appellant was incarcerated, the JDR court appointed attorney John Q. Adams to represent him. After corresponding with appellant, Adams filed an answer on April 30, 1993, denying paternity and requesting genetic testing.

On June 21, 1993, appellant was released from incarceration. On the same day, the JDR court heard the paternity matter, at which time, mother, a Division representative, and Adams, as appellant's counsel, appeared. Upon Adams' request, the JDR court ordered the parties and the child to submit to genetic tests and scheduled blood to be taken on June 29, 1993 at 10:00 a.m. The case was continued until September 13, 1993 at 10:00 a.m. for the paternity hearing.

Adams wrote to appellant at Route 2, Box 129, Elkton, Virginia 22827[1] regarding the scheduling of the paternity test. Adams notified appellant of the time and place of the test, but appellant never responded. Adams also notified appellant of the September 13, 1993 hearing date and requested appellant contact him immediately. Appellant failed to appear on June 29, 1993 to have his blood drawn.

---

[1] Appellant claimed his correct address is Route 2, Box 129-B, Elkton, Virginia.

-

At a hearing before the trial court in 1998, Adams testified he sent a copy of the JDR court's order that was entered on June 21, 1993 to appellant. Adams further testified, "I tried and tried to reach him and he just ignored me." Other than the initial letter from appellant requesting a blood test, appellant never communicated with his attorney until sometime in 1998.

Because appellant failed to appear to have his blood drawn on June 29, 1993, the Division rescheduled the draw for July 6, 1993. The Division mailed a notice of rescheduling to Route 2, Box 129, Elkton, Virginia, a home address verified by the post office, advising appellant of the rescheduled blood draw. Adams also sent a letter informing appellant of the rescheduled date. Appellant again failed to appear for testing. As a result, the Division filed a motion to show cause, which was served on appellant by posting at Route 2, Box 129, Elkton, Virginia. The motion alleged that appellant failed to submit to the court-ordered blood test. The motion to show cause was docketed for hearing on September 13, 1993, the same date as the paternity hearing.

On September 13, 1993, the Division's representative, mother, and appellant's attorney appeared before the JDR court. Once again, appellant did not appear.

-

The JDR court proceeded to hear evidence and entered an order finding appellant to be the father of the child.  The JDR court also dismissed the Division's show cause petition.

On September 23, 1993, appellant wrote to the Division identifying his address as Route 2, Box 129-B.  He denied paternity and indicated difficulty with transportation.  Appellant indicated he still wanted to take the blood test.  He asked if he could take the test in Harrisonburg.

The Division replied that the JDR court had adjudicated paternity and requested that appellant complete a financial statement for establishment of a support order.  On October 13, 1993, the Division entered an administrative support order obligating appellant to pay child support in the amount of $65 per month.  Neither the paternity order nor the administrative support order was appealed.

In mid 1997, the Division initiated a show cause proceeding against appellant for his failure to pay support in compliance with the terms of the October 13, 1993 administrative support order.  On July 28, 1997, the JDR court held appellant in civil contempt and sentenced him to jail.  Appellant then wrote to the JDR court judge on August 6, 1997 and August 11, 1997, denying his paternity of the child and requesting a genetic test.  On August 13, 1997, the JDR court responded to appellant's letter.  The court advised him that he had twice failed to appear to have his blood drawn, an order was entered on September 13, 1993 that

-

adjudicated him the child's father, and the order was a final order not subject to change.

In early 1998, appellant retained new counsel and filed a petition in the JDR court seeking again to adjudicate paternity of the child. Because the child's name was misspelled, the JDR court established a new court file. Without notice to the Division, and without the Division's involvement, the JDR court entered an order requiring mother, appellant and the child to submit to genetic testing. The test results excluded appellant as the child's biological father. Upon receipt of the paternity test results, the JDR court became aware of the misspelled name and the prior paternity proceeding. The JDR court entered an order on June 8, 1998, dismissing appellant's paternity petition, finding the court had "no jurisdiction over parentage" because it was previously adjudicated. From this order, appellant appealed to the Rockingham County Circuit Court.

The circuit court, after two ore tenus hearings, dismissed the paternity petition, holding that a collateral attack was not appropriate to challenge the sufficiency of the evidence. The trial court opined that appellant was free to pursue a challenge to the original order on the basis of fraud under Code § 8.01-428. Appellant did not appeal the circuit court's decision.

Appellant then filed an action in the circuit court to "set aside a final order," alleging the September 13, 1993 JDR

-

court's paternity order was obtained by fraudulent representations by mother. Appellant also filed a motion in the JDR court on May 24, 1999, which sought to modify his obligation to pay child support on the basis that a change in circumstances occurred as a result of the blood test that excluded appellant as the child's father. The JDR court denied appellant's motion to modify on October 25, 1999, and appellant appealed that order to the circuit court.

The independent action and the motion to modify were consolidated for hearing in the circuit court. The parties also agreed the evidence was the same in the case at bar as in the previous juvenile court petitions. Therefore, there was an agreement that the transcripts from the 1998 paternity action also would be included as evidence in this case.

The circuit court denied the petition to set aside the paternity judgment and the motion to modify. In its opinion and order, the circuit court found that mother "either knowingly or unknowingly perpetrated a fraud upon the lower court in providing testimony as to the identity of the father of her child." The court further characterized the fraud as "intrinsic." However, the circuit court found that appellant did not have "clean hands," stating:

> In the case at hand, it cannot be said
> that the defendant, Lucas, has entered this
> suit with clean hands. In fact, the fault
> for the decision in the lower court lies
> with Lucas. Twice, he was scheduled for DNA

-

testing, and twice he failed to show up.  He was issued a show cause for this failure to show up, and he failed to attend court for the show cause and the hearing to determine paternity.  Had Lucas fulfilled his obligation and shown up for any one of these three required appointments, he would not be in the predicament he is in now.  It was only after he was imprisoned for failure to pay his child support obligation that he finally took action.  His attorney was present at the paternity hearing and it was at this stage that [mother's] perjury should have been exposed.  Furthermore, following the determination of paternity by the J & DR Court, Lucas had an opportunity to appeal the case.  He failed to do so, and the decision became final.  It is because of Lucas' inaction and negligence that the case is now at this stage.  Based on this, he cannot now collaterally attack the decision of the lower court.

The circuit court also found that appellant had not shown any change in monetary circumstances, thereby dismissing the motion to amend.  The court ruled that the blood test excluding appellant as the father was not a change of circumstances.

## II.  ANALYSIS

Initially, appellant contends he was not given adequate notice of the June 29, 1993 and July 6, 1993 blood draws and the September 13, 1993 show cause hearing.  Appellant argues that the Division mailed notices of the blood draws to Route 2, Box 129, Elkton, Virginia, not his correct address, Route 2, Box 129-B, Elkton, Virginia and that the show cause notice was posted at the Box 129 address, rather than Box 129-B.

-

Assuming, without deciding all the notices went to the wrong address, such error is of no moment.  Appellant was personally served with the original paternity petition while he was incarcerated.  Appellant's court-appointed counsel filed an answer on his behalf.  Through counsel, appellant requested a blood test.  "'Any action on the part of defendant, except to object to the jurisdiction, which recognizes the case as in court, will amount to a general appearance.'"  Maryland Casualty Co. v. The Clintwood Bank, Inc., 155 Va. 181, 186, 154 S.E. 492, 494 (1930) (citation omitted).  Thus, appellant entered a general appearance in the paternity proceeding.

Once a party has made a general appearance through counsel, service on counsel is service on the party.  Code § 8.01-314.

Further, appellant was charged with knowledge of the hearing dates.  See Hunter v. Commonwealth, 15 Va. App. 717, 722, 427 S.E.2d 197, 201 (1993) ("The attorney-client relationship presumes that attorney and client, as servant and master, will communicate about all important stages of the client's upcoming trial.  Notice to [the defendant's] attorney of record of the trial date is evidence that the notice was given to [the defendant].").  See Lockard v. Whitenack, 151 Va. 143, 153, 144 S.E. 606, 609 (1928) ("'If an attorney is authorized to appear, the jurisdiction over the defendant is perfect [sic], and the subsequent action of the attorney, not induced by fraud of the adverse party, is binding on the client

-

at law and on equity.'" (citation omitted)), overruled in part, Council v. Commonwealth, 198 Va. 288, 94 S.E.2d 245 (1956). Appellant alleges no such fraud.

The trial court could have reasonably inferred that appellant, in fact, knew of the blood testing dates and location by his letter of September 23, 1993. Appellant referenced the blood test, indicating he had no funds nor transportation to get to the location. He even indicated he would prefer the test to be taken in Harrisonburg. Again, the fact finder could conclude that appellant knew of the details of the earlier scheduled testing.

Therefore, the record belies appellant's claim of lack of notice. He was served personally with the paternity petition, and his attorney made a general appearance and appeared at each stage of the proceeding. Appellant's failure to communicate and cooperate with counsel caused his predicament, not lack of notice. We conclude that appellant had proper notice.

Appellant next contends the JDR court failed to follow the procedures set forth in Code § 20-61.3. Specifically, appellant contends that because he was not served personally with the show cause summons, the court could not enter a "default judgment" against him. Further, he argues that Code § 20-61.3 was violated because he was not served with a copy of the paternity order.

-

Appellant cannot complain of the type of service of the show cause summons because the show cause was dismissed on September 13, 1993 at the paternity hearing. Further, counsel had notice of the show cause hearing.

It is important to note that the September 13, 1993 adjudication of paternity was not a default judgment. When one appears generally, files a pleading, and is represented by counsel at all stages of the proceedings, that party is not in default. See Rules 2:7, 3:17 and 7B:9. Appellant's absence and his failure to communicate with counsel were of his own choosing.

Code § 20-61.3 envisions a "default" situation when the putative father is served personally but does not participate in the proceedings, either personally or by counsel. The statute states that in the absence of a putative father who has been served personally, "[T]he court shall proceed in hearing the evidence in the case . . . as if the putative father were present." Code § 20-61.3. Code § 20-61.3 concludes by requiring a copy of the order to be served upon the father. Id. Because appellant was present through counsel, the service requirement was satisfied. See Code § 8.01-314.

Appellant next challenges the sufficiency of the evidence in the original paternity hearing of September 13, 1993. Appellant contends the evidence did not rise to a "clear and convincing" level of proof. First, it should be noted appellant

did not appeal the September 13, 1993 paternity determination. He now attempts to collaterally attack that judgment, which became a final order twenty-one days after the date of entry, on sufficiency grounds. See Rule 1:1.

Appellant's contention fails for a number of reasons. First, it is well settled that one cannot collaterally attack a prior judgment on sufficiency grounds. See Morse v. Commonwealth, 6 Va. App. 466, 369 S.E.2d 863 (1988). In Morse, Morse contended the trial court erroneously relied on a prior conviction for driving with a suspended license when it declared him an habitual offender, arguing that the evidence was not sufficient to convict him of driving with a suspended license. We held, "[w]e find no sound reason for allowing the defendant to challenge the sufficiency of the evidence to support his underlying conviction. If such a practice were authorized, the adjudication hearing would inevitably become a forum for relitigating each of the three prior final judgments." Id. at 469, 369 S.E.2d at 865.

We now address appellant's independent suit under Code § 8.01-428 to set aside the 1993 paternity order on the basis of alleged fraud. In Jennings v. Jennings, 26 Va. App. 530, 495 S.E.2d 544 (1998), we held:

> A court may "entertain at any time an independent action . . . to set aside a judgment or decree for fraud upon the court." Code § 8.01-428(D). Because "judicial proceedings must have a certainty

-

> of result, and a high degree of finality
> must attach to judgments," we construe the
> language contained in Code § 8.01-428(D)
> narrowly. Byrum v. Lowe & Gordon, Ltd., 225
> Va. 362, 365, 302 S.E.2d 46, 48 (1983)
> (citation omitted).

Id.

In Charles v. Precision Tune, Inc., 243 Va. 313, 414 S.E.2d 831 (1992), the Supreme Court of Virginia listed the elements of the independent action:

> "(1) a judgment which ought not, in equity
> and good conscience, to be enforced; (2) a
> good defense to the alleged cause of action
> on which the judgment is founded; (3) fraud,
> accident, or mistake which prevented the
> defendant in the judgment from obtaining the
> benefit of his defense; (4) the absence of
> fault or negligence on the part of the
> defendant; and (5) the absence of any
> adequate remedy at law."

Id. at 317-18, 414 S.E.2d at 833 (citation omitted).

At issue in this case is whether appellant produced sufficient evidence to satisfy the fourth element, absence of fault or negligence on his part. We reject appellant's argument that he was free from fault or negligence. The trial court found, "[i]t is because of Lucas' inaction and negligence that the case is now at this stage." The trial court factually found that appellant was personally served with the original paternity petition, he appeared generally by counsel, he failed to communicate with counsel, he failed to appear at two scheduled blood draws, and he failed to appear in court. Clearly, appellant was the author of his own predicament. Had appellant

-

appeared for the testing, he would have been excluded as the father and no finding of paternity would have been made. Thus, the evidence overwhelmingly indicates appellant was not free of fault.[2]

Appellant next contends this Court must change the current body of jurisprudence to allow a father to re-open a determination of paternity in the event of error or mistake. In essence, appellant asks that we ignore the doctrine of collateral estoppel as enunciated in Slagle v. Slagle, 11 Va. App. 341, 398 S.E.2d 346 (1990). We decline that invitation and do not deem it necessary to defend the doctrine in this opinion. Collateral estoppel is a "'fundamental precept of common-law adjudication.'" Slagle, 11 Va. App. at 344, 398 S.E.2d at 348 (quoting Montana v. United States, 440 U.S. 147 (1979)).

However, as discussed above, one who is free from neglect and fault can seek relief under Code § 8.01-428(D) if fraud can be shown to have been perpetrated on the court. See id. at 348, 398 S.E.2d at 350. "Principles of collateral estoppel may not be invoked to sustain fraud." Id. (citation omitted).

Finally, appellant contends the paternity test finding that he is not the father is a material change in circumstance that

_____

[2] Because we find the evidence supports the trial court's finding of appellant's fault and negligence, we do not address the other elements of this action under Code § 8.01-428(D). For the same reason, we do not address the trial court's finding that the evidence only showed "intrinsic fraud."

-

warrants a termination of child support.  Specifically,

appellant maintains the trial court erred in ruling that only

monetary changes are relevant to a change in circumstance.  In a

spousal support context, we have held that "other than death or

remarriage, the 'circumstances' which make 'proper' an increase,

reduction or cessation of spousal support under Code § 20-109

are financial and economic ones."  <u>Hollowell v. Hollowell</u>, 6 Va.

App. 417, 419, 369 S.E.2d 451, 452-43 (1988).  We see no reason

to arrive at a different result for child support.  We hold that

a "change in circumstances" must bear on the financial needs of

the child and the ability of the parent to pay.[3]

　　　For these reasons, we affirm the trial court's dismissal of

father's petition to reduce child support.


<u>Affirmed.</u>

---

[3] Effective July 1, 2001, Code § 20-49.10 affords relief
from a child support or paternity determination order where a
subsequent, scientifically reliable, genetic test excludes the
individual as the father.

-