PETER S. ANDERSON vs. BARBARA A. ANDERSON.

Essex. January 10, 1990. - April 12, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Divorce and Separation,* Child support, Modification of judgment, Relief
from judgment. *Paternity. Practice, Civil,* Relief from judgment.
*Contempt.*

A 1972 divorce decree and a 1975 supplemental divorce decree necessarily
adjudicated the paternity of the parties' child; where the decrees were
neither appealed nor revised by a timely motion for relief from judg-
ment, they precluded the husband's claim in 1983 that he was not the
father of the child. [255-259] LIACOS, C.J., concurring.
In a contempt proceeding in a divorce action the judge did not err in as-
sessing against the husband, as part of the judgment, arrearages attrib-
utable to extraordinary medical and dental expenses of the parties'
child, as specified in the divorce decree. [259-260]

LIBEL for divorce filed in the Probate Court for the county
of Essex on February 4, 1972. Complaints for modification
and for an adjudication of contempt were filed on September
29, 1983, and October 5, 1983, respectively.

CIVIL ACTION commenced in the Essex Division of the
Probate and Family Court Department on September 29,
1983.

The proceedings were consolidated for trial and were
heard by *Albert P. Pettoruto,* J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Gerald D. McLellan (Jeffrey D. McLellan* with him) for
Peter S. Anderson.

*Donald E. McNamee (George P. Lordan, Jr.,* with him)
for Barbara A. Anderson.

*James M. Shannon,* Attorney General, *Jon Laramore,* As-
sistant Attorney General, *Marilyn Ray Smith,* Special Assis-

tant Attorney General, & *Linda Swain Minkoff*, for Massachusetts Department of Revenue, amicus curiae, submitted a brief.

LYNCH, J. On September 27, 1983, eleven years after a divorce decree obligating him to pay child support was first entered, the plaintiff, Peter S. Anderson, sought to disprove his paternity of then twelve-year-old Kirsten Anderson, the only child born during his marriage to the defendant, Barbara A. Anderson.[1] He filed motions to adjudicate nonpaternity and to modify the divorce decree. In connection therewith, Peter also moved on three occasions to compel blood and genetic marker tests. Each of these requests was denied. In November, 1987, Barbara's motion for summary judgment was allowed, precluding Peter from litigating the paternity issue.

After trial on both the modification motion and on the contempt action Barbara had filed in October, 1983, against Peter for child support arrearages dating back to 1980, the judge found Peter in contempt of the support order and assessed damages in the amount of $70,322, plus interest.[2] Peter appealed from the summary judgment grant in his action to disprove paternity, and from the contempt judgment. He also appealed from the judge's denial of his motion for modification. We transferred the case here on our own motion and now affirm.

Our review of the relevant history of this protracted dispute is drawn from the Probate Court judge's findings, as well as the affidavits and exhibits submitted to the judge on

---

[1]Because of the numerous petitions filed over the history of this case, in the course of which Peter and Barbara Anderson alternately were plaintiff or defendant, to avoid confusion, we subsequently refer to the parties by neither their common surname nor their party status, but by their first names only.

[2]The $70,322 figure includes not only $44,000 of unpaid regular support payments due during the period of default alleged, but also an unpaid lump sum, plus interest, amounting to $10,057, due under the 1975 supplemental divorce decree in liquidation of previous arrearages; $15,265 in unpaid extraordinary medical and dental expenses of Kirsten, and $1,000 in unpaid reimbursement for taxes, both also due under the 1975 decree.

the summary judgment motion, and the parties' admissions. Barbara and Peter Anderson were married in June, 1965, and Kirsten was born in January, 1971. Marital discord led to the couple's separation in December, 1971, and in October, 1972, Barbara was granted a decree of divorce nisi on the ground of adultery. That decree gave Barbara custody of "their minor child," and obligated Peter to make payments for Kirsten's support. At no time during the divorce proceedings did Peter deny either the date of the separation from Barbara, or the paternity of Kirsten.[3]

Soon after the divorce decree became final, in 1973, Peter remarried and settled in Chicago. In October, 1974, Barbara filed a contempt complaint in Probate Court because of Peter's failure to make the child support payments required by the 1972 divorce decree. Peter was found to be in contempt, and ordered to pay $16,944 of arrearages. Peter did not raise any question of his paternity during the course of this contempt action.

In June, 1975, Barbara filed another contempt complaint, this time in the Circuit Court of Cook County, Illinois, seeking to enforce both the 1974 support order and the 1972 divorce decree.[4] The parties, represented by counsel, negotiated, agreed upon and signed a settlement accord which the Illinois court reviewed and entered as a supplemental divorce decree in November, 1975. Not only did Peter not dispute his paternity at this time, but he entered into a settlement which stated that "Kirsten was born to the parties."

Within four months of the Illinois court's entry of the supplemental divorce decree, in February, 1976, Peter received the results of a semen analysis indicating low fertility. According to exhibits submitted by Peter to the Probate Court in opposition to summary judgment, he had consulted at least three physicians that year who specialized in treating male

[3]In fact, the Probate Court judge noted, in Peter's answer to Barbara's divorce complaint, he denied his wife was entitled to custody of Kirsten.

[4]The Illinois court found that as of September, 1975, Peter owed Barbara an additional $12,000 in unpaid support that had accrued since the 1974 Massachusetts contempt judgment was entered.

infertility. He asserted that, during the years of his marriage to Barbara, the couple did not use contraception, yet there were no pregnancies besides the one that led to Kirsten's birth. Upon his 1973 remarriage, Peter claimed he and his second wife also tried from the start, unsuccessfully, to have a child. When fertility tests of his second wife uncovered no problems, he decided to be evaluated himself. A June, 1976, urologists' letter referred to several fertility tests conducted on Peter in the preceding months, and concluded: "At the present time, Mr. Anderson must be considered markedly subfertile." By November, 1978, these same doctors had completed a course of hormonal treatments on Peter, and according to another letter submitted to the Probate Court judge, were recommending Peter and his second wife as adoptive parents since "chances for conception in their case are extremely poor."

In 1981, Peter stopped making support payments, claiming that he was not Kirsten's father. Peter disputed his paternity of Kirsten to a court for the first time in the motions for adjudication of nonpaternity and modification of divorce decree filed in September, 1983. He alleged that he was enticed and seduced by Barbara into a single act of sexual intercourse for the purpose of defrauding and deceiving him into believing he was the father of the child she knew she was carrying at the time. Peter did not support the allegation of fraud by either an affidavit or other evidence.

After granting summary judgment for Barbara on Peter's motions for blood and genetic tests, and for adjudication of his paternity, the judge heard Peter's motion for modification of the divorce decree and Barbara's complaint for contempt. He found that Peter had failed to demonstrate a material change in circumstances for a modification of his support obligations under the divorce decree. At the same time, the judge found him to be in contempt for failure to comply with that decree, and issued an order requiring Peter to pay Barbara $70,322, plus interest. Peter's posttrial motions for a new trial and relief from judgment were denied, as was his March, 1988, motion to stay execution of the judgment, or

alternatively, to pay the contempt judgment amount into escrow, pending the outcome of this appeal.

On appeal, Peter challenges the grant of summary judgment on his nonpaternity motion, and the denial of his modification motion only in so far as he was precluded from interposing his nonpaternity claim on that motion. Peter also asserts that the judge abused his discretion in (a) denying him an order to compel the taking of human leukocyte antigen and genetic marker blood tests to prove nonpaternity, (b) by resting a portion of his contempt judgment on Barbara's undocumented testimony of the amount of expenses she incurred for Kirsten in extraordinary medical costs, and (c) denying his motion for a stay of execution of the contempt judgment or alternatively, placing the judgment amount in escrow, pending appeal. We review each of these claims in turn and uphold the actions of the Probate Court judge.

1. *Paternity related claims.* In granting summary judgment to dispose of Peter's claims of nonpaternity, the Probate Court judge ruled that the claim had been previously determined in the divorce litigation, see *Heacock* v. *Heacock*, 402 Mass. 21, 23 n.2 [1988]; *Aetna Casualty & Sur. Co.* v. *Niziolek*, 395 Mass. 737, 742 [1985]). "A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies.' " *Fidler* v. *E.M. Parker Co.*, 394 Mass. 534, 539 (1985), quoting *Montana* v. *United States*, 440 U.S. 147, 153 (1979), quoting *Southern Pac. R.R.* v. *United States*, 168 U.S. 1, 48-49 (1897).

Divorce decrees are conclusive and binding on the parties with regard to all matters they actually or necessarily determine, until revoked or modified. *Bloom* v. *Bloom*, 337 Mass. 480, 482 (1958). *Jelly* v. *Jelly*, 327 Mass. 706, 708 (1951). *Whitney* v. *Whitney*, 325 Mass. 28, 31 (1949). Both the 1972 and 1975 decrees governing the Andersons' divorce contained statements to the effect that Kirsten was born to Peter and

Barbara during their marriage. Peter did not deny or even question his paternity in either proceeding and, in fact, signed an agreement which became an order of the court attesting to that paternity in 1975. In addition, both decrees obliged Peter to pay child support to Barbara on behalf of Kirsten, a necessary predicate of which is a finding of paternity. G. L. c. 208, § 28. It was open to Peter in both proceedings to challenge paternity.

While Massachusetts courts have not had occasion to assess the conclusiveness of a paternity finding in a divorce decree, other jurisdictions have universally held that a divorce decree constitutes an adjudication of the paternity of a child of the marriage. See *Conlon* v. *Heckler*, 719 F.2d 788, 797 (5th Cir. 1983) (interpreting Texas law); *Soltis* v. *Soltis*, 470 So. 2d 1250, 1252 (Ala. Civ. App. 1985); *DeWeese* v. *Unick*, 102 Cal. App. 3d 100, 105-106 (1980); *McNeece* v. *McNeece*, 39 Colo. App. 160 (1977); *Marriage of Yakubec*, 154 Ill. App. 3d 540, 544 (1987); *Marriage of Detert*, 391 N.W.2d 707, 710 (Iowa Ct. App. 1986); *Rucinski* v. *Rucinski*, 172 Mich App. 538 (1988); *Clay* v. *Clay*, 397 N.W.2d 571, 575 (Minn. Ct. App. 1986), appeal dismissed, 484 U.S. 804 (1987); *Butler* v. *Brownlee*, 152 Mont. 453 (1969); *Chrzanowski* v. *Chrzanowski*, 325 Pa. Super. 298, 305 (1984); *Luedtke* v. *Koopsma*, 303 N.W.2d 112, 114 (S.D. 1981); *Lerman* v. *Lerman*, 148 Vt. 629 (1987); *N.C.* v. *W.R.C.*, 317 S.E.2d 793, 797 (W. Va. 1984).

Peter Anderson argues, however, that he should be granted relief from the prior judgments because of what he asserts is newly discovered evidence that could not have been ascertained at the time of either the 1972 or the 1975 divorce decrees. Such an argument is encompassed within Mass. R. Dom. Rel. P. 60 (b) (2) (identical to Mass. R. Civ. P. 60 [b] [2], 365 Mass. 828 [1974]), which is, first of all, directed to the discretion of the trial judge, *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Admin. & Fin.*, 369 Mass. 562, 565 (1976), and secondly may only be advanced within one year after judgment. For these reasons alone that claim must fail.

Neither do the grounds alleged by Peter in support of his nonpaternity motion qualify him for treatment under Mass. R. Dom. Rel. P. 60 (b) (6) (identical to Mass. R. Civ. P. 60 [b] [6], 365 Mass. 828 [1974]), — "any other reason justifying relief from the operation of judgment" — for which there is no time limitation. We have stated that relief from judgment may not be granted under rule 60 (b) (6), when the reason relied on can be construed to fit within one of the specific categories enumerated in rule 60 (b) (1)-(5). *Bromfield v. Commonwealth*, 400 Mass. 254, 256 (1987). Clearly, the ground relied on by Peter is one of newly discovered evidence.[5]

Finally, it appears that courts in other jurisdictions have routinely applied their procedural or statutory equivalents to rule 60 (b) in denying relief in similar situations. In the case most analogous to the one before us, an ex-husband responsible for paying child support under a divorce decree filed a motion for relief from judgment, as well as a motion to compel blood tests fifteen months after the decree was entered, on the ground that fertility tests taken after the decree revealed he had a low sperm count and poor likelihood of fathering a child. *Rucinski v. Rucinski*, 172 Mich. App. 538 (1988). The appellate court affirmed a ruling that the ex-husband's motion for relief from judgment for "newly discovered evidence" was barred as not having been brought within one year of judgment. *Id.*[6]

---

[5]On the basis of his description in his pleadings in this case, alleging a duplicitous out-of-character seduction by his wife around the time of Kirsten's conception, Peter also raises fraudulent misrepresentation on Barbara's part as a ground for relief. Rule 60 (b) (3) provides relief from judgment due to fraud, misrepresentation, or misconduct of an adverse party. As noted above, there were no facts placed before the Probate Court judge of such a fraud, and thus this would not have been a proper ground on which to have considered granting Peter relief. However, even if there were facts as to fraud, rule 60 (b) (3) is subject to the same one-year time limit as the subsection for newly discovered evidence. Thus, Peter fares no better on the only other ground for rule 60 (b) relief even vaguely hinted at in his case.

[6]For other cases carefully enforcing relief from judgment statutory time limits in later paternity challenges, see *Waldrop v. Waldrop*, 395 So. 2d

Because the Andersons' 1972 and 1975 divorce decrees necessarily contain an adjudication of Peter's paternity, and because those decrees were neither properly appealed nor revised by a timely motion for relief from judgment, we hold that they preclude Peter's 1983 actions to disprove paternity. Therefore, we also reject Peter's contention that the Probate Court judge abused his discretion in denying his motion to order HLA blood and genetic marker tests, because the results would not be relevant to any issue properly before the court.

Finally, Peter has challenged the denial of his motion for blood tests on the ground that he has a constitutional "due process" right to such a test. He cites no authority that supports the existence of such a right. On the record before us, we need not reach this issue. Claim preclusion, which bars his right to attack the 1972 and 1975 divorce decrees in

60, 61 (Ala. Civ. App. 1980) (ex-husband's claim of nonpaternity "clearly" not timely three years after divorce judgment, and one year after "discovering" ex-wife's "fraud"); *McNeece* v. *McNeece,* 39 Colo. App. 160, 164 (1977) (ex-husband's "newly discovered evidence" of nonpaternity was too late for relief from judgment or other equitable remedy, when he learned of such evidence within days of entry of divorce decree but waited five years to raise nonpaternity issue); *Roddenberry* v. *Roddenberry,* 255 Ga. 715, 717 (1986)(ex-husband's petition for relief from judgment, on the basis of "newly discovered evidence" that an HLA blood test a year after entry of divorce judgment requiring him to pay child support had excluded him as the father, was too late when brought two years after divorce decree); *Marriage of Yakubec,* 154 Ill. App. 3d 540, 543-544 (1987) (ex-husband "showed a complete lack of diligence in pursuing his rights" in waiting several months before filing petition to vacate divorce judgment after "learning" of his ex-wife's "fraud" regarding paternity of child); *Marriage of Detert,* 391 N.W.2d 707, 710 (Iowa Ct. App. 1986) ("newly discovered evidence" of HLA blood test results excluding paternity three years after agreement by stipulation providing for ex-husband to pay child support was too late for meeting relief from judgment's one-year deadline); *Roche* v. *Roche,* 596 P.2d 647, 648 (Utah 1979) (ex-husband's motion, two years after entry of divorce decree with child support order, for relief from judgment on the grounds of "newly discovered" medical evidence casting doubt on his paternity, was time-barred); *N.C.* v. *W.R.C.,* 317 S.E.2d 793, 797 (W. Va. 1984) (ex-husband's petition for equitable relief, seeking to set aside divorce judgment obliging him to pay child support, on the grounds of nonpaternity, alleging fraud, held in essence to be a rule 60 [b] motion, and thus too late by two months).

1983, extends to any theory he might have had to challenge the determination of paternity (or obtain evidence with which to do so) contained therein if he had timely sought redress under rule 60 (b). *Cousineau* v. *Laramee*, 388 Mass. 859, 863 n.4 (1983).

2. *Contempt judgment.* Peter challenges so much of the Probate Court's judgment of contempt that holds him responsible for $15,265 in arrearages for Kirsten's "extraordinary medical and dental care" expenses, as the 1975 supplemental divorce decree required him to pay. He argues that evidence did not warrant the finding of liability in that amount. We disagree.

The 1975 divorce decree obligated Peter to pay for Kirsten's extraordinary medical ("inclusive of psychological, psychiatric and optical") and dental expenses. It defined these expenses as follows: "[E]xtraordinary shall include, without limitation, teeth straightening or major dental work, operations, serious illness requiring hospitalization or extended medical care and diagnostic tests, but shall not include routine check-ups, minor ailments or medical supplies (except as required in the treatment of serious illness)." Barbara testified in some detail, under vigorous cross-examination by Peter's counsel, concerning Kirsten's diagnosed problems and prescribed treatment. The judge found Kirsten's continuing bouts of pneumonia, hospitalizations, related X-rays, laboratory tests and bone scans, psychological treatment and orthodontia all constituted "extraordinary expenses," as defined in the 1975 divorce decree. The judge properly based his findings on Barbara's testimony.

Thus, this is not a case of a lay witness, Barbara, being called upon to make a medical diagnosis. Here, the judge was called upon to interpret a clause in a divorce decree and decide whether to fit within it specific expenses for matters already diagnosed. We will not overturn his determination of this matter unless we find it clearly erroneous. *Schuler* v. *Schuler*, 382 Mass. 366, 371 (1981). We note that Peter has failed to direct us to any particular expense he believes was

error to include in the category of "extraordinary medical or dental expenses." We hold there was no clear error.

In addition, the finding on the amount of these expenses was based on Barbara's testimony. The judge did not have before him the records Barbara maintained over the years relating to her daughter's medical history and expenses, or the medical bills and cancelled checks. Barbara's testimony was nevertheless as to facts of which she had personal knowledge. Although her failure to supply documentary support for this testimony would ordinarily raise questions as to its accuracy, the matter remained a question of credibility for the judge. If Peter wished the judge to have the benefit of Barbara's written records, he could have taken advantage of the discovery tools available to him over the course of the preceding four years of litigation in this case, to request their production, Mass. R. Dom. Rel. P. 34 (identical to Mass. R. Civ. P. 34, as amended, 385 Mass. 1212 [1982]), or a subpoena duces tecum. Mass. R. Dom. Rel. P. 45 (b) (identical to Mass. R. Civ. P. 45 [b], as amended, 399 Mass. 1214 [1987]).

We conclude there was no abuse of discretion in assessing the arrearages attributable to extraordinary medical and dental expenses in the judgment for contempt.

Because the Probate Court did not err in denying Peter relief on his paternity or modification claims, and in assessing, as part of Peter's contempt judgment, arrearages for medical expenses, it is unnecessary for us to review his appeal from the denial of a stay of the execution of the contempt judgment, or in the alternative, an order to place the judgment amount in escrow pending his appeal of the summary judgment decision on his petition to adjudicate nonpaternity. The issue has become moot.

The judgments of the Probate Court are affirmed.

*So ordered.*

Anderson *v.* Anderson.

LIACOS, C.J. (concurring). While in agreement with the result reached in this case, I write separately out of a concern that the court's citation of opinions from other jurisdictions suggests an overly restrictive view of the availability of relief from judgment under Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974). It is my opinion that the court's decision finds ample support in the precedent of this court and needs no other reinforcement.

The court denies the plaintiff relief from judgment under subsections (2) and (3) of Mass. R. Dom. Rel. P. 60 (b) (identical to Mass. R. Civ. P. 60 [b]) because the plaintiff failed to advance his newly-discovered evidence and fraud claims within one year of the decree of divorce of the parties. Relief under subsection (6) of rule 60 (b) is denied because "the reason relied on [by the plaintiff] can be construed to fit within one of the specific categories enumerated in rule 60 (b) (1)-(5). *Bromfield* v. *Commonwealth*, 400 Mass. 254, 256 (1987)." *Ante* at 257. At this point, the court need go no further in discussing rule 60 (b) as it applies to the facts of this case.

Nonetheless, the court chooses to elaborate by referring to paternity decisions in which other courts "have routinely applied their procedural or statutory equivalents to rule 60 (b) in denying relief in similar situations." *Ante* at 257. Most of these decisions involve situations in which the one-year limitation on relief from judgment under rule 60 (b) (1)-(3) would apply to bar the plaintiff's claim, were it brought in Massachusetts. See, e.g., *Rucinski* v. *Rucinski*, 172 Mich. App. 20 (1988). However, two of the cases cited, as described by the court, inappropriately suggest an overly restrictive view of rule 60 (b) which is not supported by past decisions of this court. A more thorough examination of these cases, however, reveals that such a restrictive view is not warranted.

In *Roddenberry* v. *Roddenberry*, 255 Ga. 715 (1986), the Georgia Supreme Court denied a petition for relief from judgment brought by the plaintiff ex-husband, who presented newly-discovered blood test evidence to deny paternity two

years after agreeing to paternity in a divorce settlement
agreement. On the basis of its characterization of the plain-
tiff's motion as an "extraordinary motion for new trial," the
court stated that "the doctrines of res judicata and estoppel
by judgment are inapposite." *Id.* at 717. The plaintiff's ex-
traordinary motion for new trial was denied because he failed
to meet his burden to prove that "want of due diligence was
not the reason that the [new] evidence was not acquired
sooner." *Id.* Therefore, the *Roddenberry* decision implies
that the plaintiff's motion might have been granted had he
been able to prove that no lack of due diligence existed.

The court describes *Marriage of Yakubec*, 154 Ill. App.
3d 540 (1987), as a case in which the plaintiff was denied
relief from judgment because he " 'showed a complete lack
of diligence in pursuing his rights' in waiting *several months*
before filing petition to vacate divorce judgment after 'learn-
ing' of his ex-wife's 'fraud' regarding paternity of the child"
(emphasis added). *Ante* at 258 n.6, quoting *Marriage of
Yakubec, supra* at 543-544. At first blush, the suggestion
that a delay of "several months" in bringing a petition war-
rants a finding of a lack of due diligence appears somewhat
Draconian. However, the Illinois court's decision in this case
becomes more reasonable when we learn that the plaintiff's
petition was not brought until approximately fifteen years af-
ter the parties were divorced, and that the plaintiff did not
act to deny paternity until he was served with a petition for
rule to show cause to enforce child support and maintenance
obligations over $31,000 in arrears. *Id.* at 543. In these cir-
cumstances, a finding of a lack of due diligence appears
justified.

Aside from the citation of the cases described above, I find
myself in agreement with the court's opinion. Accordingly, I
concur.