ERIN COLLEEN DEVAUX, APPELLEE, V. RICHARD ARLEN DEVAUX II, APPELLANT.

514 N.W.2d 640

Filed April 15, 1994. No. S-92-234.

Robert J. Hovey, P.C., of Law Offices of Sanders & Hovey, P.C., for appellant.

Jerome J. Ortman for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

WHITE, J.

Erin Colleen Zaback (Zaback), formerly known as Erin

Colleen DeVaux, filed an application to modify her dissolution decree to reflect that her former husband, Richard Arlen DeVaux II (DeVaux), was not the father of her minor child. The district court granted the modification, and the former husband appealed to the Nebraska Court of Appeals. Under our authority to regulate the caseloads of the appellate courts of this state, we removed the matter to this court. We reverse in part, affirm in part, and remand the cause with directions.

On February 14, 1979, Zaback and DeVaux married. On December 9, 1986, a child was born. On December 12, 1988, Zaback filed for dissolution of the marriage. On March 17, 1989, the district court entered its decree of dissolution. In entering the decree, the district court found that the minor child was the only issue born to the marriage. The court awarded Zaback custody of the minor child, subject to DeVaux's reasonable visitation rights. The court ordered DeVaux to pay monthly child support.

On November 13, 1990, Zaback filed an application to modify the decree. In the application, Zaback alleged that she had discovered, through the administration of blood tests, that DeVaux was not the natural father of the minor child. Zaback requested that the court modify the decree by "specifically finding that [DeVaux] is not the father of the minor child of the parties" and by terminating the child support and visitation provisions of the decree.

DeVaux demurred to this application, alleging, among other things, that the minor child's paternity was res judicata. The trial court overruled the demurrer. DeVaux then filed an answer alleging "unclean hands," repeating the claim of res judicata, and requesting attorney fees.

On March 26, 1991, the district court, on its own motion, held a hearing. Zaback admitted that during her marriage to DeVaux she had sexual relations with her current husband, Terry Lee Zaback. Zaback also admitted that she had not informed DeVaux of her extramarital sexual relations until after the dissolution decree had been entered. According to her testimony, Zaback first questioned the minor child's paternity in the summer of 1990, when she met Terry Lee Zaback's family and noticed the family's strong resemblance to her child.

Subsequent blood tests established a 98.4 percent likelihood that Terry Lee Zaback was the father of the minor child. At the close of the hearing, the court ordered additional testing to determine whether DeVaux could be the father of the minor child.

On January 2, 1992, the test results were furnished to the court, although they were not admitted into evidence. The court granted a continuance for trial and appointed a guardian ad litem for the minor child.

On February 20, the court held a trial on the application to modify. The court first invited Terry Lee Zaback to intervene in the action, and he intervened pro se. The parties then stipulated to the results of the blood tests, which established that DeVaux was "excluded from being the biological father of the child[.]" The court then heard additional testimony from all three parties. All three agreed that the minor child has a substantial, beneficial relationship with DeVaux.

The district court found that Terry Lee Zaback was the natural father of the minor child. The court terminated DeVaux's support obligation and his visitation rights; however, the court allowed for temporary visitation pending its receipt of a report by the guardian ad litem. (The court later extended the temporary visitation to include the pendency of this appeal.) The court ordered Zaback to repay DeVaux the child support payments she had received from December 1, 1990, through January 30, 1992. Finally, the court ordered each party to pay his or her own attorney fees and costs.

DeVaux appealed. DeVaux asserts, in summary, that the trial court erred (1) in overruling the demurrer; (2) in allowing Terry Lee Zaback to intervene; (3) in finding that Terry Lee Zaback was the father of the minor child; (4) in denying DeVaux the opportunity to testify regarding his relationship with the minor child; (5) in ordering Zaback to return only a portion of the child support payments she had received; and (6) in failing to award DeVaux attorney fees and costs.

DeVaux first asserts that the trial court erred in overruling his demurrer. DeVaux argues that the demurrer should have been sustained because the minor child's paternity was res judicata by virtue of the dissolution decree. This argument presents us

with this question: Under the doctrine of res judicata, does a finding of paternity in a dissolution decree prevent the parties to the decree from relitigating paternity? We answer this question: Yes.

In considering a demurrer, a court must assume that the pleaded facts, as distinguished from the legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inferences from the facts alleged; however, a court cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Wheeler v. Nebraska State Bar Assn.*, 244 Neb. 786, 508 N.W.2d 917 (1993); *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 244 Neb. 408, 507 N.W.2d 275 (1993); *Gallion v. Woytassek*, 244 Neb. 15, 504 N.W.2d 76 (1993).

The doctrine of res judicata rests on the necessity to terminate litigation and on the belief that a person should not be vexed twice for the same cause. *Dakota Title v. World-Wide Steel Sys.*, 238 Neb. 519, 471 N.W.2d 430 (1991); *Farmers State Bank v. Germer*, 231 Neb. 572, 437 N.W.2d 463 (1989). Res judicata bars relitigation of any right, fact, or matter directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions. See, e.g., *Antelope Cty. Farmers Coop. v. Citizens State Bank*, 240 Neb. 760, 484 N.W.2d 822 (1992); *Kerndt v. Ronan*, 236 Neb. 26, 458 N.W.2d 466 (1990); *State v. Gerdes*, 233 Neb. 528, 446 N.W.2d 224 (1989); *NC + Hybrids v. Growers Seed Assn.*, 228 Neb. 306, 422 N.W.2d 542 (1988); *DeCosta Sporting Goods, Inc. v. Kirkland*, 210 Neb. 815, 316 N.W.2d 772 (1982). Res judicata may be raised in a demurrer when the pleading challenged by the demurrer sets forth the facts to which the rule of res judicata applies. See, *Tedco Development Corp. v. Overland Hills, Inc.*, 205 Neb. 194, 287 N.W.2d 49 (1980); *Card v. Card*, 174 Neb. 124, 116 N.W.2d 21 (1962); *In re Estate of McCleneghan*, 145 Neb. 707, 17 N.W.2d 923 (1945); *Marsh-Burke Co. v. Yost*, 102 Neb. 814, 170 N.W. 172 (1918). Thus, in deciding whether the

minor child's paternity is res judicata, we can consider only those facts presented in the pleading challenged by the demurrer—the application to modify.

As a threshold matter, we must consider whether the minor child's paternity was directly addressed or necessarily included in the parties' dissolution proceeding. The application to modify alleges that under the provisions of a previously entered dissolution decree, Zaback was awarded custody "of the minor child *of the parties*." (Emphasis supplied.) This language indicates that the dissolution proceeding directly addressed the minor child's paternity. Cf. *State ex rel. Ondracek v. Blohm*, 363 N.W.2d 113 (Minn. App. 1985) (holding that the issue of paternity is required to be raised in every dissolution proceeding). In addition, the application to modify alleges that under the decree, DeVaux was obligated to pay child support. "A fundamental fact necessary to sustain an order of child support is paternity by the man judicially obligated to pay such support." *Younkin v. Younkin*, 221 Neb. 134, 143, 375 N.W.2d 894, 900 (1985). Because the trial court could not have ordered child support without finding that DeVaux was the father of the child, paternity was an issue necessarily included in the dissolution proceeding. See *Hackley v Hackley*, 426 Mich. 582, 395 N.W.2d 906 (1986) (a divorce judgment and a support order arising from the divorce constitute an adjudication of paternity).

Having found that the minor child's paternity was adjudicated in the dissolution proceedings, we must now decide whether the four elements of res judicata are present.

We must first determine whether the paternity findings in the dissolution decree were rendered by a court of competent jurisdiction. The application to modify, addressed to the district court for Sarpy County, Nebraska, alleges that a dissolution decree was entered "herein." We read this allegation to mean that the district court for Sarpy County entered the dissolution decree. The district courts of Nebraska have jurisdiction to enter dissolution decrees. See Neb. Rev. Stat. § 42-351 (Reissue 1988). In entering such decrees, the district courts also have jurisdiction to determine whether the husband is the father of any minor children to be supported as a result of the dissolution

proceedings. *Younkin, supra*; *Farmer v. Farmer*, 200 Neb. 308, 263 N.W.2d 664 (1978). The decree, including the paternity findings, was rendered by a court of competent jurisdiction.

Second, we must determine whether the paternity findings in the dissolution decree constitute a final judgment. Courts which have addressed this issue have overwhelmingly ruled that the paternity findings in a dissolution decree are a final judgment and are res judicata. See, *Ex Parte Presse*, 554 So. 2d 406 (Ala. 1989); *Peercy v. Peercy*, 154 Colo. 575, 392 P.2d 609 (1964); *In re Marriage of Klebs*, 196 Ill. App. 3d 472, 554 N.E.2d 298 (1990); *In re Marriage of Detert*, 391 N.W.2d 707 (Iowa App. 1986); *Anderson v. Anderson*, 407 Mass. 251, 552 N.E.2d 546 (1990); *Hackley, supra*; *Clay v. Clay*, 397 N.W.2d 571 (Minn. App. 1986), *appeal dismissed* 484 U.S. 804, 108 S. Ct. 49, 98 L. Ed. 2d 14 (1987); *Markert v. Behm*, 394 N.W.2d 239 (Minn. App. 1986); *Butler v. Brownlee and Dist. Ct.*, 152 Mont. 453, 451 P.2d 836 (1969); *Arnold v. Arnold*, 207 Okla. 352, 249 P.2d 734 (1952); *Adoption of Young*, 469 Pa. 141, 364 A.2d 1307 (1976); *Luedtke v. Koopsma*, 303 N.W.2d 112 (S.D. 1981); *Lerman v. Lerman*, 148 Vt. 629, 528 A.2d 1121 (1987); *Johns v. Johns*, 64 Wash. 2d 696, 393 P.2d 948 (1964); *N.C. v. W.R.C.*, 173 W. Va. 434, 317 S.E.2d 793 (1984). But see *Hansom v. Hansom*, 75 Misc. 2d 3, 346 N.Y.S.2d 996 (1973) (admission of paternity in legal separation proceedings did not preclude father from challenging paternity in later support proceeding). These courts reason that the parties to a dissolution action had a full and fair opportunity to litigate the issue of paternity during the dissolution proceedings. See, *Markert, supra*; *Lerman, supra*.

Zaback contends that under certain circumstances paternity findings in a dissolution decree are not final. Zaback relies primarily on two cases: *Cline v. Cline*, 200 Neb. 619, 264 N.W.2d 680 (1978), and *Younkin v. Younkin*, 221 Neb. 134, 375 N.W.2d 894 (1985). We find that both of these cases are distinguishable and not controlling.

In *Cline*, the court entered a default decree dissolving the marriage and awarding custody of the minor child to the husband. The wife subsequently filed a motion to modify the decree. The wife alleged that her husband had promised her,

prior to the entry of the decree, that he would make sure she got custody of the minor child if she did not " 'cause any problems.' " 200 Neb. at 620, 264 N.W.2d at 681. The wife also alleged that but for this promise, she would have appeared at the divorce hearing. We recognized that the best interests of the children govern decisions relating to custody:

> [W]here facts affecting *the custody* and best interests of children . . . are not called to the attention of the court, and, particularly in default cases, where the issues affecting custody have not been fully tried, the court, upon a proper motion for modification, may consider all facts and circumstances, including those existing prior to and at the time of the judgment or decree, in making a subsequent determination *of custody*.

(Emphasis supplied.) *Id*. at 622, 264 N.W.2d at 682. We concluded that the district court properly modified the divorce decree in the best interests of the child.

*Cline* is a custody case. Custody is based on the best interests of the child. In contrast, paternity is not based on the best interests of the child. The fact that child custody may be modified does not permit paternity findings to be disturbed. *Arnold, supra*. See, *Soltis v. Soltis*, 470 So. 2d 1250 (Ala. Civ. App. 1985) (although child custody is never res judicata, paternity cannot be disputed in a subsequent proceeding); *Dept. of Human Services v. Lowatchie*, 569 A.2d 197 (Me. 1990) (unlike alimony, child support, custody, or ground for divorce, paternity is not subject to change).

In *Younkin*, the dissolution decree named the husband as the father of the parties' unborn child and ordered the husband to pay child support. Within 6 months of the date of the decree, the husband brought an action to modify the paternity findings of the decree pursuant to Neb. Rev. Stat. § 42-372 (Reissue 1984), which provided: "A decree dissolving a marriage shall not become final or operative until six months after the decree is rendered . . . . [T]he court may, at any time within such six months, vacate or modify its decree." During the 6-month period, the control of the decree rests within the discretion of the trial court. *Zachry v. Zachry*, 185 Neb. 336, 175 N.W.2d 616 (1970); *Willie v. Willie*, 167 Neb. 449, 93 N.W.2d 501 (1958).

However, a court will not vacate or modify a decree during the 6-month period without a showing of good cause. *Miller v. Miller*, 190 Neb. 816, 212 N.W.2d 646 (1973); *Willie, supra*. We found that the wife's representations to the husband and the lack of tests which could establish, in utero, the paternity of the unborn child constituted good cause. We held that the father was entitled to an evidentiary hearing on the issue of paternity.

The decree in *Younkin* was not a final judgment. The husband in *Younkin* was permitted to challenge the paternity findings in the decree because the 6-month waiting period had not elapsed and the decree had not become "operative" or final. The holding of *Younkin* was based on the specific statutory provision under which the husband sought relief. The present version of that statute also provides for a 6-month waiting period before a dissolution decree becomes final. See § 42-372 (Reissue 1988). In the present action, Zaback's application to modify was filed long after the 6-month waiting period had expired. *Younkin* is inapplicable to the present action.

One final case, not cited by either of the parties, merits discussion. In *Snodgrass v. Snodgrass*, 241 Neb. 43, 486 N.W.2d 215 (1992), a former husband sought to establish his nonpaternity of one of the minor children named in his dissolution decree. The former husband raised no new facts or circumstances. We held that the husband was not entitled to a modification of the decree. We reasoned that a party seeking to modify paternity findings in a decree must at least present a change of circumstances in order to overcome the finality of those findings. Our opinion in *Snodgrass* did not discuss whether and under what conditions the paternity findings in a decree could be modified. To the extent that *Snodgrass* is applicable to the present action, it stands for the proposition that paternity findings in a dissolution decree can be a final judgment.

We find the cases from other jurisdictions persuasive and not in conflict with any of our prior decisions. "There is no more forceful example of the rationale underlying the requirement of finality of judgments than the chaos and humiliation which would follow from allowing [persons] to challenge, long after a

final judgment has been entered, the legitimacy of children born during their marriages." *Hackley v Hackley*, 426 Mich. 582, 599, 395 N.W.2d 906, 914 (1986). We conclude that a paternity determination in a dissolution decree is a final judgment.

Third, we must determine whether the dissolution decree was a judgment on the merits. For purposes of res judicata, a judgment on the merits is one which is based on legal rights, as distinguished from mere matters of practice, procedure, jurisdiction, or form. *Kerndt v. Ronan*, 236 Neb. 26, 458 N.W.2d 466 (1990). One commentator explains that summary judgments, judgments on a directed verdict, judgments after trial, default judgments, and consent judgments are all generally considered to be on the merits for purposes of res judicata. Jack H. Friedenthal et al., Civil Procedure § 14.7 (2d ed. 1993). In contrast, dismissals on technical procedural grounds are generally *not* on the merits for purposes of res judicata. See *id*. See, also, *Omaha Road Equipment Co. v. Thurston County*, 122 Neb. 35, 238 N.W. 919 (1931) (dismissal for lack of jurisdiction does not bar future claims); *Morris v. Linton*, 74 Neb. 411, 104 N.W. 927 (1905) (dismissal without prejudice does not bar future claims).

The application to modify alleges that a dissolution decree was entered and that the decree provided for custody "of the minor child of the parties," child support, and visitation rights. In entering the decree, the district court reached the merits of the parties' cause—the dissolution of their marriage—and decided the issue of paternity. The decree was not based on technical procedural grounds. The dissolution decree was a judgment on the merits.

Fourth, we must determine whether the parties are identical in both proceedings. This issue is beyond dispute. Zaback and DeVaux, the parties to the dissolution action, are the same parties identified in the application to modify.

We conclude that under the doctrine of res judicata, a finding of paternity in a dissolution decree precludes the parties to the decree from relitigating paternity.

Zaback argues that the doctrine of res judicata notwithstanding, the district court's independent equity

jurisdiction provides the authority for the court to vacate or modify the decree. Assuming, without deciding, that Zaback's argument is correct, we find that Zaback is not entitled to a new trial.

A litigant seeking the vacation or modification of a prior judgment after term may take one of two routes. The litigant may proceed either under Neb. Rev. Stat. § 25-2001 (Reissue 1989) or under the district court's independent equity jurisdiction. See, *Joyce v. Joyce*, 229 Neb. 831, 429 N.W.2d 355 (1988); *Emry v. American Honda Motor Co.*, 214 Neb. 435, 334 N.W.2d 786 (1983).

Under § 25-2001, a district court has the power to vacate or modify its own judgment after term for one of nine reasons enumerated in the statute. The only one of these reasons applicable to Zaback's claim is a motion for new trial based on newly discovered evidence. See § 25-2001(1). For purposes of the following analysis, we will treat Zaback's application to modify as a motion for new trial on the basis of newly discovered evidence. Cf. *Abboud v. Cutler*, 238 Neb. 177, 469 N.W.2d 763 (1991) (motion to vacate a dismissal is equivalent to a motion for new trial).

In the present action, Zaback is not entitled to relief under § 25-2001 because she is out of time; claims of newly discovered evidence must be filed within 1 year of the final judgment. See Neb. Rev. Stat. § 25-1145 (Reissue 1989). However, this does not dispose of Zaback's argument because, as stated above, § 25-2001 is not the exclusive remedy for vacating or modifying a judgment after term. Section 25-2001 is concurrent with the courts' independent equity jurisdiction. *Joyce, supra*; *Emry, supra*. We find, however, that Zaback's application to modify does not survive demurrer because it does not comply with the substantive requirements for a motion for new trial on the basis of newly discovered evidence.

As a general rule, in order to make a sufficient showing for a new trial on the grounds of newly discovered evidence, the proof in support thereof must show that such evidence is now available which neither the litigant nor counsel could have discovered by the exercise of reasonable diligence and that the evidence is not merely cumulative, but competent, relevant, and material, and of such character as to reasonably justify a belief

that its admission would bring about a different result if a new trial were granted. *Ipock v. Union Ins. Co.*, 242 Neb. 448, 495 N.W.2d 905 (1993); *Federal Dep. Ins. Corp. v. Swanson*, 231 Neb. 148, 435 N.W.2d 659 (1989), *overruled on other grounds, Eccleston v. Chait*, 241 Neb. 961, 492 N.W.2d 860 (1992). In the present action, we are more particularly concerned with the requirement of reasonable diligence.

Newly discovered evidence is not grounds for a motion for new trial where the exercise of reasonable diligence would have produced the evidence. *Miles v. Box Butte County*, 241 Neb. 588, 489 N.W.2d 829 (1992); *Gruenewald v. Waara*, 229 Neb. 619, 428 N.W.2d 210 (1988); *Reilly v. First Nat. Bank & Trust Co.*, 220 Neb. 443, 370 N.W.2d 163 (1985). A motion for new trial on the grounds of newly discovered evidence must allege that the evidence could not have been discovered during term with the exercise of reasonable diligence. *Smith v. Goodman*, 100 Neb. 284, 159 N.W. 418 (1916). See, also, *Younkin v. Younkin*, 221 Neb. 134, 375 N.W.2d 894 (1985) (Krivosha, C.J., dissenting); *American National Red Cross v. Young*, 133 Neb. 558, 276 N.W. 194 (1937). Zaback's application fails to allege that the results of the blood tests could not have been discovered with the exercise of reasonable diligence. Therefore, Zaback is not entitled to a new trial on the basis of newly discovered evidence.

We hold that under the doctrine of res judicata, a finding of paternity in a dissolution decree precludes the parties to the decree from relitigating paternity. In addition, Zaback has failed to allege facts which would entitle her to a new trial on the basis of newly discovered evidence. Accordingly, Zaback cannot maintain the present action to modify the paternity findings of the decree. We express no opinion regarding Terry Lee Zaback's right or ability to maintain a paternity action.

Because Zaback's application to modify is fatally deficient, the district court erred in failing to sustain DeVaux's demurrer on the ground of res judicata. Following the sustaining of a demurrer, the losing party is entitled to amend the pleadings unless there exists no reasonable possibility that amendment will remedy the deficiency. *Hoch v. Prokop*, 244 Neb. 443, 507

N.W.2d 626 (1993); *LaPan v. Myers*, 241 Neb. 790, 491 N.W.2d 46 (1992).

In the present action, no amendment can alter our conclusion of res judicata. Upon a review of the record, it appears that Zaback also would be unable to amend her pleading to remedy her deficiency regarding reasonable diligence.

For purposes of a motion for new trial on the basis of newly discovered evidence, "reasonable diligence" means appropriate action where there is some reason to awaken inquiry and direct diligence in a channel in which it will be successful. *State v. Munson*, 204 Neb. 814, 285 N.W.2d 703 (1979).

Zaback testified that she first questioned the minor child's paternity in July 1990, when the child was 3½ years old. Zaback called Boys Town, which directed her to the University of Nebraska Medical Center, which in turn directed her to call either an attorney or a medical doctor. Zaback contacted counsel, and the tests were performed in August 1990. Zaback testified that at all times prior to the entry of the decree she was unaware that blood tests could determine the minor child's paternity. Zaback's belated realization regarding the minor child's paternity and her lack of awareness regarding blood tests are immaterial. Zaback was aware of her extramarital sexual relations. These sexual relations provided her with "some reason to awaken inquiry" as to the paternity of the minor child. If Zaback had been reasonably diligent, she would have discovered the possibility of blood tests at an earlier date. We conclude that Zaback is not entitled to amend her application.

In view of our decision that the district court should have sustained DeVaux's demurrer, we need not consider summarized assignments of error (2) through (5), which allege errors occurring at trial.

DeVaux asserts that the trial court erred in failing to award him attorney fees. In a proceeding to modify a dissolution decree, the decision to award attorney fees rests within the trial court's discretion. *Meyers v. Meyers*, 222 Neb. 370, 383 N.W.2d 784 (1986). On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion. *In re Estate of Watkins*, 243 Neb. 583, 501 N.W.2d

292 (1993); *Sports Courts of Omaha v. Meginnis*, 242 Neb. 768, 497 N.W.2d 38 (1993). We find that the trial court did not abuse its discretion in failing to award costs and fees to DeVaux.

In summary, we hold that the trial court erred in overruling DeVaux's demurrer but did not err in denying DeVaux fees and costs. Accordingly, we reverse in part and in part affirm. We remand the cause with directions to sustain the demurrer without leave to amend. As a result of our decision today, the provisions of the divorce decree, including those provisions for support and visitation, are reinstated.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.