the future, after he was no longer legally detained on the California sentence, it would be illegal to detain him on the Nebraska sentences. Such a "possibility of future illegal detention" is not the basis for a writ of habeas corpus. See *id*. Because a writ of habeas corpus was not available to Johnson based on the claims he made in his petition and his position at the hearing, we agree with the district court that he was not entitled to habeas corpus relief.

## CONCLUSION

We conclude that the district court did not err when it concluded that Johnson was not entitled to a writ of habeas corpus. We therefore affirm the district court's denial and dismissal of Johnson's petition for a writ of habeas corpus.

AFFIRMED.

WRIGHT, J., participating on briefs.

————————————

STACY M., APPELLEE, V.
JASON M., APPELLANT.
___ N.W.2d ___

Filed February 13, 2015.    No. S-14-214.

1. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.
2. **Parent and Child: Paternity.** A finding that an individual is not a biological father is not the equivalent of a finding that an individual is not the legal father.
3. **Parent and Child: Paternity: Presumptions: Evidence.** Under Nebraska common law, later embodied in Neb. Rev. Stat. § 42-377 (Reissue 2008), legitimacy of children born during wedlock is presumed. This presumption may be rebutted only by clear, satisfactory, and convincing evidence.
4. **Jurisdiction: Divorce: Paternity.** The district court in a dissolution proceeding has jurisdiction to resolve a disputed issue of paternity.
5. **Divorce: Paternity: Child Support.** Even if paternity is not directly placed in issue or litigated by the parties to a dissolution proceeding, any dissolution decree which orders child support implicitly makes a final determination of paternity.
6. **Divorce: Paternity: Presumptions: Evidence.** When the parties fail to submit evidence at the dissolution proceeding rebutting the presumption of paternity, the dissolution court can find paternity based on the presumption alone.

7. **Divorce: Paternity: Child Support.** A dissolution decree which orders child support is a legal determination of paternity.

8. **Divorce: Paternity: Child Support: Res Judicata.** A dissolution decree that orders child support is res judicata on the issue of paternity.

9. **Paternity: Evidence: Res Judicata.** Neb. Rev. Stat. § 43-1412.01 (Reissue 2008) overrides res judicata principles and allows, in limited circumstances, an adjudicated father to disestablish a prior, final paternity determination based on genetic evidence that the adjudicated father is not the biological father.

10. **Parent and Child: Paternity.** Neb. Rev. Stat. § 43-1412.01 (Reissue 2008) gives the court discretion to determine whether disestablishment of paternity is appropriate in light of both the adjudicated father's interests and the best interests of the child.

11. **Parent and Child: Due Process.** Both parents and their children have cognizable substantive due process rights to the parent-child relationship. These rights protect the parent's right to the companionship, care, custody, and management of his or her child, and they also protect the child's reciprocal right to be raised and nurtured by a biological or adoptive parent.

12. **Parent and Child: Child Support.** Support of one's children is a fundamental obligation which takes precedence over almost everything else.

13. **Divorce: Child Support: Public Policy.** The public policy of this state provides that parents have a duty to support their minor children until they reach majority or are emancipated, and a parent is not relieved of this duty by virtue of divorce.

14. **Parent and Child: Child Support.** The obligation of support is a duty of a legally determined parent.

Appeal from the District Court for Adams County: TERRI S. HARDER, Judge. Affirmed.

John B. McDermott, of Shamberg, Wolf, McDermott & Depue, for appellant.

No appearance for appellee.

HEAVICAN, C.J., CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

STEPHAN, J.

After the dissolution of his marriage became final, Jason M. discovered through genetic testing that he was not the biological father of a child born during the marriage. He sought equitable relief in the form of an order suspending his child support obligation without terminating the parental relationship. He now appeals from an order denying his requested relief. We affirm.

## FACTS

Jason and Stacy M.'s marriage was dissolved by a decree entered by the district court for Adams County in March 2011. Although the decree itself is not included in the record, other evidence establishes that it required Jason to pay child support for three minor children. The oldest child is now of age, so Jason is currently paying approximately $600 per month in child support for the two younger children born during the marriage.

Jason suspected during the marriage that he was not the biological father of the youngest child, but he did not raise the issue of paternity in the dissolution proceedings. In 2013, Jason obtained genetic testing which established he was not the father of the child. Through counsel, he subsequently filed a pleading entitled "Action in Equity to Suspend Child Support." He alleged Stacy knew the identity of the youngest child's biological father but refused to obtain child support from him. He asserted the appropriate "equitable remedy" was to suspend his obligation to pay child support for the youngest child.

Stacy filed a pro se responsive pleading in which she alleged she did not know the identity of the child's biological father, because she was "taken advantage of and [had] no knowledge of by whom." She further alleged that she always assumed Jason was the child's father and that Jason "is the only father [the child] knows and will ever know."

After conducting an initial evidentiary hearing, the district court appointed a guardian ad litem for the child pursuant to Neb. Rev. Stat. § 43-1412.01 (Reissue 2008) and then conducted a second hearing at which the guardian ad litem participated. At the second hearing, Jason's counsel objected to the appointment of the guardian ad litem, "because we're not proceeding under 43-1412.01. And our action was an action in equity just to suspend the child support."

Jason and Stacy testified at both hearings. Jason acknowledged that since the dissolution of the marriage, he has always exercised his visitation rights with the child and enjoys an "[e]xcellent" relationship with him. They celebrate holidays together, attend church together, go hunting and fishing, and

enjoy other sporting activities. He wants the relationship to continue. His position in this case is aptly summarized by the following excerpt from his testimony:

> [J]ust for the record, I would like you, the judge, to know and Stacy to know that I would continue and will always love [the child] as my son until I die. He is considered my son. I just feel that it's not my responsibility to pay child support for [a child] that is not biologically mine.

Jason testified that his employment and income have not changed substantially since the decree was entered.

Stacy testified she did not know that Jason was not the biological father of the child until learning of the genetic testing results. She testified that at the relevant time, she was drinking at a bar with friends and thought she had been "drugged" and then "taken advantage of sexually" by a man whose identity she did not know. She did not report this incident because she was ashamed. She has never attempted to determine the identity of the child's biological father. She agreed that Jason had a very good relationship with the child which she wants to continue. She stated that the child "thinks the world" of Jason and that she has not told the child that Jason is not his biological father, because "it would crush him." Stacy testified that she used the child support paid by Jason to support the child and that termination of the child support obligation or the paternal relationship would not be in the child's best interests.

The district court denied the relief sought by Jason. It reasoned that a child born during wedlock is presumed to be the legitimate offspring of the parties and that while § 43-1412.01 afforded Jason a remedy to disestablish his paternity, he had not sought relief under that statute. The court found that Jason "wants the rights of a parent, but does not want the majority of the financial responsibility (child support) of a parent." Finding no Nebraska case that would support the requested relief, the court declined to exercise its equitable power to grant relief.

Jason timely appealed, and we moved this case to our docket pursuant to our statutory authority to regulate the caseloads

of the appellate courts of this state.[1] We note that Stacy did not file a brief or otherwise appear in this appeal.

## ASSIGNMENT OF ERROR

Jason assigns the district court abused its discretion by failing to suspend his child support obligation.

## STANDARD OF REVIEW

[1] On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.[2]

## ANALYSIS

[2,3] There is compelling evidence that Jason is not the biological father of the child in question. But as we have recently noted, a finding that an individual is not a biological father is not the equivalent of a finding that an individual is not the legal father.[3] Under Nebraska common law, later embodied in Neb. Rev. Stat. § 42-377 (Reissue 2008), legitimacy of children born during wedlock is presumed.[4] This presumption may be rebutted only by clear, satisfactory, and convincing evidence.[5] The testimony or declaration of a husband or wife is not competent to challenge the paternity of a child.[6]

[4-8] The parentage of a child born during a marriage is traditionally contested, if at all, in dissolution proceedings.[7] The

---

[1] Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[2] *Floral Lawns Memorial Gardens Assn. v. Becker*, 284 Neb. 532, 822 N.W.2d 692 (2012); *Newman v. Liebig*, 282 Neb. 609, 810 N.W.2d 408 (2011); *County of Sarpy v. City of Papillion*, 277 Neb. 829, 765 N.W.2d 456 (2009).

[3] *State on behalf of B.M. v. Brian F.*, 288 Neb. 106, 846 N.W.2d 257 (2014).

[4] *Alisha C. v. Jeremy C.*, 283 Neb. 340, 808 N.W.2d 875 (2012). See *Helter v. Williamson*, 239 Neb. 741, 478 N.W.2d 6 (1991).

[5] *Id*.

[6] *Id*.

[7] *Alisha C., supra* note 4. See *Ford v. Ford*, 191 Neb. 548, 216 N.W.2d 176 (1974).

marital presumption of paternity can be rebutted at that time.[8] The district court in a dissolution proceeding has jurisdiction to resolve a disputed issue of paternity.[9] Even if paternity is not directly placed in issue or litigated by the parties to a dissolution proceeding, any dissolution decree which orders child support implicitly makes a final determination of paternity.[10] When the parties fail to submit evidence at the dissolution proceeding rebutting the presumption of paternity, the dissolution court can find paternity based on the presumption alone.[11] The trial court necessarily makes such a finding when it orders child support, because the trial court could not order child support without finding that the presumed father was the father of the child.[12] Thus, a dissolution decree which orders child support is a legal determination of paternity.[13] As a result, any dissolution decree that orders child support is res judicata on the issue of paternity.[14] Under common law, the issue cannot be relitigated except under very limited circumstances through a motion to vacate or modify the decree.[15]

[9,10] However, in 2008, the Legislature enacted § 43-1412.01, which overrides res judicata principles and allows, in limited circumstances, an adjudicated father to disestablish a prior, final paternity determination based on genetic evidence that the adjudicated father is not the biological father.[16] Section 43-1412.01 gives the court discretion to determine whether disestablishment of paternity is appropriate

---

[8] *Id.*

[9] *Alisha C., supra* note 4; *Younkin v. Younkin*, 221 Neb. 134, 375 N.W.2d 894 (1985).

[10] *Alisha C., supra* note 4. See *DeVaux v. DeVaux*, 245 Neb. 611, 514 N.W.2d 640 (1994) (superseded by statute on other grounds as stated in *Alisha C., supra* note 4).

[11] *Id.*

[12] *Alisha C., supra* note 4; *DeVaux, supra* note 10.

[13] *Alisha C., supra* note 4. See *Snodgrass v. Snodgrass*, 241 Neb. 43, 486 N.W.2d 215 (1992).

[14] *Alisha C., supra* note 4. See *DeVaux, supra* note 10.

[15] *Id.*

[16] *Alisha C., supra* note 4.

in light of both the adjudicated father's interests and the best interests of the child.[17]

During both the proceedings below and in this appeal, Jason unequivocally stated he is *not* seeking disestablishment of paternity pursuant to § 43-1412.01. Despite this, he argues that the language of the statute supports the equitable remedy he pursues by providing "a court with the authority to suspend a child support order without necessarily disestablishing paternity."[18] The first sentence of § 43.1412.01 authorizes an individual to ask a court to "set aside a final judgment, court order, administrative order, obligation to pay child support, or any other legal determination of paternity" based on the results of genetic testing. Jason argues that the use of the word "or" distinguishes an "obligation to pay child support" from a "legal determination of paternity," thus authorizing a court to suspend the former without affecting the latter.

But this argument ignores the use of the word "other" in the same sentence. As we have noted, a decree of dissolution which orders a man to pay child support is an implicit determination of paternity, even if the issue of paternity was not contested. Clearly, this sentence of the statute lists an "obligation to pay child support" as one of several forms of a "legal determination of paternity" which may be challenged through genetic test results. This plain meaning is underscored by the fourth sentence of the statute, which provides: "A court that sets aside a determination of paternity in accordance with this section shall order completion of a new birth record and may order any other appropriate relief, including setting aside an obligation to pay child support."[19] In short, the language of the statute does not provide any support for the equitable relief which Jason seeks. Rather, it permits but does not require a court to set aside a child support obligation when paternity has been disestablished. It does not authorize any change in child support without such disestablishment.

---

[17] *Id.*

[18] Brief for appellant at 8.

[19] § 43-1412.01.

[11-14] Section 43-1412.01 provides Jason with a remedy at law to seek disestablishment of paternity and elimination of his child support obligation. But he has elected not to utilize that remedy, because he does not wish to disestablish paternity and thereby terminate the parental relationship. It is commendable that Jason has maintained a loving relationship with the child after learning that he is not the biological father. However, the parental relationship is not one which can be bifurcated in the manner Jason urges. Both parents and their children have cognizable substantive due process rights to the parent-child relationship.[20] These rights protect the parent's right to the companionship, care, custody, and management of his or her child, and they also protect the child's reciprocal right to be raised and nurtured by a biological or adoptive parent.[21] Support of one's children is a fundamental obligation which takes precedence over almost everything else.[22] One aspect of support includes the regular monthly payment of child support established by the guidelines.[23] The public policy of this state provides that parents have a duty to support their minor children until they reach majority or are emancipated, and a parent is not relieved of this duty by virtue of divorce.[24] The obligation of support is a duty of a legally determined parent.

Jason is the legally determined parent of this child, and he has not sought to set aside that determination despite the existence of a statutory remedy and apparent factual grounds to do so. We are not persuaded by his argument that suspension of his child support obligation is equitable or necessary to compel Stacy to seek support from the child's biological father. The district court did not err in denying the requested relief.

---

[20] *In re Interest of Meridian H.*, 281 Neb. 465, 798 N.W.2d 96 (2011).

[21] *Id.*

[22] *Caniglia v. Caniglia*, 285 Neb. 930, 830 N.W.2d 207 (2013).

[23] *Id.*

[24] *Henderson v. Henderson*, 264 Neb. 916, 653 N.W.2d 226 (2002).

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

Affirmed.

Wright, J., participating on briefs.

———————————

State of Nebraska, appellee, v.
Terrell T. Thorpe, appellant.
___ N.W.2d ___

Filed February 13, 2015.    No. S-14-495.

1. **Postconviction: Appeal and Error.** Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law.
2. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusion.
3. **Effectiveness of Counsel.** A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact.
4. **Effectiveness of Counsel: Appeal and Error.** When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error.
5. ____: ____. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.
6. **Postconviction: Appeal and Error.** An appellate court will not consider as an assignment of error a question not presented to the district court for disposition through a defendant's motion for postconviction relief.
7. **Postconviction: Collateral Attack: Appeal and Error.** A defendant cannot use a motion for postconviction relief to collaterally attack issues that were decided against him or her on direct appeal.
8. **Postconviction: Appeal and Error.** A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased.
9. **Constitutional Law: Effectiveness of Counsel.** A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.
10. **Effectiveness of Counsel: Proof: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.